## BROWN v. FAGAN, *Appellant.*

**Mistake:** EQUITY WILL NOT RELIEVE AGAINST NEGLIGENT MISTAKE. Equity will not relieve against mistake when the party complaining had within his reach the means of ascertaining the true state of facts, and, without being induced thereto by the other party, neglected to avail himself of his opportunities of information.

*Appeal from Cape Girardeau Circuit Court.*—HON. D. L. HAWKINS, Judge.

AFFIRMED.

*Houck & Ranney* for appellant, cited 1 Story Eq. Jur., § 142; *Daniel v. Mitchell*, 1 Story 173; *Marvin v. Bennett,*

8 Paige 312; *Leger v. Bonnaffe*, 2 Barb. 475; *Irick v. Fulton*, 3 Gratt. 193; *Miles v. Stevens*, 3 Barr 21; *Allen v. Hammond*, 11 Pet. 63; Kerr on Fraud and Mistake, 409, 424, 431; 1 Fonblanque Eq., 114; *Hitchcock v. Giddings*, Daniell 1; *Buck v. Fawcett*, 3 P. Wms. 242; *The Hiram*, 1 Wheat. 443; *Boon v. Miller*, 16 Mo. 468; *Bresnehan v. Price*, 57 Mo. 424; *Hunt v. Rousmaniere*, 1 Pet. 13; *Cassidy v. Metcalf*, 66 Mo. 529; *Bunse v. Agee*, 47 Mo. 270; *Harris v. Board of Education*, 3 Mo. App. 570; *Baker v. Lever*, 67 N. Y. 304.

*Wilson & Whitelaw* and *J. B. Dennis* for respondent, cited Kerr on Injunction, 54, 55, 38, 36; Sto. Eq. Jur. (8th Ed), §§ 146, 147, 148, 149, 197, 200, 202; Kerr on Fraud and Mistake, 406, 407, 408; Leake on Contracts, 182; *Quinlan v. Keiser*, 66 Mo. 603; *Tison v. Labeaume*, 14 Mo. 199; *Bryan v. Hitchcock*, 43 Mo. 527; *Holland v. Anderson*, 38 Mo. 55; *Buford v. Caldwell*, 3 Mo. 478; *Gordere v. Downing*, 18 Ill. 492; *Bellows v. Stone*, 14 N. H. 175; *Lyman v. United Ins. Co.*, 17 John. 373; *Nevius v. Dunlap*, 33 N. Y. 676; *Wemple v. Stewart*, 22 Barb. 154; *Ruffner v. McConnel*, 17 Ill. 212; *Daniel v. Mitchell*, 1 Story, 172; *Warner v. Daniels*, 1 Wood. & Min. 90; *Hill v. Bush*, 19 Ark. 522; *Juzan v. Toulmin*, 9 Ala. 662.

NORTON, J.—This suit is founded on a note executed by defendant to plaintiff for $1,600. The answer of defendant admits the execution of the note, but sets up, by way of equitable defense, that plaintiff and defendant, on the 24th of July, 1874, entered into a copartnership for the purpose of carrying on the marble business; that the partnership thus formed continued to do business till the 20th of September, 1875, when it was dissolved; that, upon its dissolution, and on settlement with plaintiff, the note in question was given by defendant, under a mistaken belief on his part that the firm had made money; that the firm, instead of making, had lost money, and that defendant had

reason to believe that plaintiff knew this; that, on the day of the dissolution of said partnership, plaintiff and defendant entered into a new partnership for the purpose of carrying on the same business; that this partnership continued till April 18th, 1876, when it was dissolved, and defendant gave plaintiff another note for $800 for his interest therein; that this note was also given under a mistaken belief as to the value of plaintiff's interest, and upon the assurance of plaintiff that he would adjust and settle the matters between them on a fair and just basis; that the interest of plaintiff in the second partnership, at the time the note was given, was worth only twenty-one cents. The answer concludes with a prayer asking the court to enjoin the collection of the note sued on until the condition of the partnership affairs could be investigated, and to order an account to be taken, &c. The replication denied that there was either fraud or mistake, as alleged in the answer, and on the trial of the cause, judgment was rendered for plaintiff, from which defendant has appealed; and we are asked to review the action of the trial court in dismissing the equitable defense set up in the answer, and rendering said judgment, because it is alleged that the finding and action of the court is unsupported by the evidence.

The proper determination of the question presented involves, necessarily, a consideration of the evidence. There were but two witnesses who testified in regard to the settlement of the partnership affairs, and their evidence is as follows: Defendant, in support of his answer, testified as follows: That he and Brown formed the partnership heretofore set out; that Brown bought a half interest in the firm with a farm valued at $2,800; that, at the time of the sale of this interest, an inventory of the stock was made, but that the stock was not sufficient to make a sum large enough, so a supplemental agreement was made, and additional notes and accounts due for work were put in the firm to make a sum large enough, and that he guaranteed

the solvency of the accounts. One O'Keefe made the settlement of the first partnership affairs for us. We were both present when he fixed it, but I said at once that it was not right, and objected to it, and refused to give the note sued on for some time, but in the January following, Brown saw me as I was starting away on a business trip, and asked me for the note. I refused at first to give it, but the next day, on his statement, that, if the matter, on a full settlement, was not right, he would make it all right, I gave him the note. I did not then know how the matters of the firm actually stood, nor whether the firm had made money or not, but gave it, relying on the assurance of Brown, that if it turned out that O'Keefe had not made a correct settlement, he would fix it up. O'Keefe was a painter, did not board with me or live with me, but his children boarded with me for a while before that. After dissolution of the second partnership, I gave Brown another note of $887, which he has since assigned to one Morrison for value. I gave him this note also on the assurance that he would pay his part of the partnership debts; at the time I did not understand the books of the firm; gave this note, however, on the express assurance of Brown that he would be responsible for his part of the firm debts, and also responsible for the part he had drawn out of the firm. I have been in the marble business for thirty years. The accounts charged up in the balance sheet are bad accounts, and were lost to the firm by the fact that our agents took orders from men who were not good. I have only sued on a few of the notes in the balance sheet, which are set down as worthless. I and my agents have tried to get the money, but failed. The farm Brown sold me I sold for $3,000 ($500 paid down in cash), but I was compelled to take the farm back.

Milton T. Brown, the plaintiff, then testified that O'Keefe fixed up matters between them, and that he was satisfied; that he did not know the condition of the business; when the partnership was formed, an inventory was

taken of stock, and appraisement made, by Fagan and O'Keefe, and I took it at their appraisement; knew nothing about the value and manufacture of marble; had never been engaged in business before; was just twenty-one years of age, and had lived on a farm up to that time. After we had been in business over a year, Fagan expressed his dissatisfaction, and wanted to charge me $2.50 for his work a day, but I would not consent. Fagan then wished a dissolution, and offered me $2,800, my capital stock, and ten per cent interest for fourteen months, to-wit, $327.50, and commission on sales made by me, viz.: $188, and the total amount was $3,315.70, and I was to be charged with $644.70, the amount I had drawn out, leaving Fagan in my debt $2,670.80, and Fagan was to have all the marble, notes and accounts of the firm. We then formed a new partnership, Fagan putting in the marble and tools belonging to the old firm, and I put in, the sum of $1,045, which Fagan owed me on the $2,670.80, and he was to pay me $1,600, which I supposed he was to pay cash; $25 was settled in some other way. Fagan did not complain that the settlement made by O'Keefe was not correct, and he did not refuse to execute the note for $1,600. I did not ask him for a note for some time, because I wanted the money, and asked him for that several times after settlement, and finally he said he would not pay it just then, and as he was going off on a business trip, and I did not want the matter in such loose shape, I asked and he gave me the note now sued on. It was dated back to the date of the dissolution of the firm. Fagan did not object to giving the note. I never told Fagan that if the settlement was not correct, I would make it all right; he never complained about the settlement until I was about to sue him. On the dissolution of the second partnership, Fagan agreed to pay all the debts of the firm. I supposed we had been making money in both partnerships. I held the $1,600 note during the second partnership. The figures on page eighty-five of the original book were made by O'Keefe,

and is a memorandum of the settlement of the second partnership in existence from September 20th, 1875, to April 20, 1876, and the figures on page 141 refer to the settlement of the first partnership made by O'Keefe; when Fagan gave me the note on the dissolution of the second partnership, there was no agreement that I was to pay any part of the firm debts, or be responsible for what I had drawn out, unless for some small matter that had escaped my attention; Fagan took all the assets, marble and tools, notes, accounts and contracts, and was to pay all the firm debts. I did not know what the firm had done until I saw the balance sheets of Mr. Garrett. The firm books were accessible to both of us all the time.

It is not claimed that this evidence shows that any fraud was practiced by plaintiff in the procurement of the execution of the note sued on; but it is insisted that it does show that the note was given under a mistake of facts which constituted the inducement for the execution of it, and in such cases equity will afford relief. It may be conceded to be established law that equity will relieve against a contract which is founded on a mutual mistake of the facts which constitute the essence and basis of the contract; but it is equally well settled that equity will not afford relief in cases of mistake of facts, when the party entering into it had the means of knowing the true state of facts, and by gross negligence failed to use such means. Though a court of equity will relieve against mistake, it will not assist a man whose condition is attributable to that want of due diligence which may be fairly expected from a reasonable person; and gross negligence is presumed when a man is ignorant of the general laws of his country or of his own affairs. Kerr on Fraud and Mistake, pp. 406, 407. Mr. Story, in treating this subject, in vol. 1, Sto. Eq., § 146, observes: "It is not, however, sufficient in all cases to give the party relief, that the fact is material; but it must be such as he could not, by reasonable diligence, get knowledge of when he was put upon inquiry;

for if, by such reasonable diligence, he could have obtained knowledge of the fact, equity will not relieve him, since that would be to encourage culpable negligence."

Applying this principle to the facts of the case before us, we can see no ground for interfering with the judgment and extending to defendant the relief he seeks. It appears from his own evidence that he was well acquainted with the marble business, for the crrrying on of which the partnerships were formed, he having been engaged in it for thirty years. It also appears that plaintiff, who had just passed from his minority to full age when he entered the partnership, was a farmer, wholly without experience or knowledge of the business upon which he was entering, and conveyed to defendant his farm, valued at $2,800, for an equal interest in the stock and business. It also appears that, at the end of fourteen months, a dissolution of said partnership was proposed by defendant, who agreed to pay plaintiff for his interest therein the amount he had put in, with ten per cent interest and commission on the sales made by plaintiff, less the amount which plaintiff had drawn out, leaving the true amount to be paid about $2,600, and that the note in suit for $1,600 was given in part payment of said sum. The evidence also tended to show that defendant overestimated the value of plaintiff's interest, and that, in consequence of the firm having lost money, said interest was worth less than the amount he agreed to pay. Conceding that the evidence shows that defendant was mistaken in putting the value of plaintiff's interest at a greater sum than it was worth, when the facts are considered, that his thirty years' experience in the business must necessarily have familiarized him with the affairs of the partnership; that he had free and undenied access to the books, and had within his reach all the means of knowing to the fullest extent the real value of plaintiff's interest, and failed to use them; that he only had to look to learn, and closed his eyes, he cannot now be heard to set up his mistake to avoid the settlement or allege his

ignorance of the true condition of his own affairs in order to escape liability. Especially is this so in the absence of any evidence tending to show that plaintiff in any manner induced defendant to omit making any inquiry as to the actual value of his interest, or using the means within his reach, which, had they been resorted to, would have disclosed the true state of facts. Judgment affirmed, in which all concur.