WILLIAM R. HOUSTON, et al., Appellant, v. M. V. WELCH, Respondent.

Kansas City Court of Appeals, June 26, 1920.

EQUITY: Rescission of Contract of Sale: Negligent Mistake of Purchaser. Defendant placed certificate of stock in hands of plaintiff with request that plaintiff sell the same. Plaintiff wired New York, correctly describing stock and later received wire from New York announcing the sale thereof. Defendant assigned the certificate in blank and received the money from plaintiff who deducted the commission and tax. Later purchaser in New York refused to pay plaintiff because of his mistake in thinking he had purchased different stock. Held, there was no ground in equity for rescission

Appeal from Jackson Circuit Court.—*Hon. Daniel E. Bird,* Judge.

AFFIRMED.

*Lathrop, Morrow, Fox & Moore* and *G. H. Muckley* for appellant.

*Henry L. Jost* for respondent.

TRIMBLE, J.—This is an action in equity to rescind a sale of corporate stock and to compel a return of the purchase price. The case was tried before the court sitting as a jury, but at the close of plaintiff's evidence defendant's demurrer thereto was sustained and plaintiffs have appealed.

The defendant, a woman, owned a certificate of 1000 shares of a corporation named "Consolidated Arizona Copper *Mines* Company" and, some two or three weeks before the sale thereof which is herein sought to be annulled, called plaintiff over the 'phone and inquired as to its value. It is conceded she gave the correct name over the telephone. She was told it was worth about $1500 less the commission. Nothing was done toward a sale at that time, however. But on January 29, 1919, defendant in company with her sister went to plaintiffs' place of business, produced the certificate of stock and offered it for sale, and asked what she could get for it. Plaintiffs took the certificate of stock, examined it, read the name of the corporation of which it was a certificate, retained it and told defendant they would ask New York the price it could be sold for. No other information was given defendant, but plaintiffs telegraphed a firm in New York asking at what price a thousand shares of Consolidated Arizona Copper Mines Company could be sold, giving the date of the certificate. The New York firm replied in a telegram which, in addition to naming a price of "1/8" also stated the number of shares of stock and the name of the corporation as hereinbefore given. The plaintiffs, thinking the price of "1/8" was perhaps an error, asked for a correction and again the New York firm tele-

graphed giving the name of the aforesaid corporation
but saying that the price was "1-1/8". Thereupon the
plaintiffs figured up the amount due at that price, de-
ducted therefrom the commission and the tax and gave
the memorandum of the amount to defendant telling her
the stock "could possibly be sold for that price." The
defendant then ordered plaintiffs to sell the stock, and
the defendant and her sister went away taking the
memorandum with her, the plaintiffs telling her the
stock was "being sold in New York." While she was
gone plaintiffs received a wire from the New York firm
saying they had sold the stock at 1-3/16 which was
$62.50 more than they had previously quoted. Shortly
thereafter defendant returned and was informed that
her stock was sold and plaintiffs made a calculation of
the amount due, deducting $20.40 for commission and
tax, and drew a check to defendant for $1167.10 in pay-
ment for the stock. At the same time plaintiffs de-
livered the check to defendant they also gave her a
statement of the transaction showing that plaintiffs
had charged defendant the $20.40 for commission and
tax. That was all she knew about it. Plaintiffs had
defendant to assign the certificate in blank and she took
the check and went away with it and afterwards cashed
it.

Plaintiffs sent the certificate of stock to the New
York firm who thereupon inserted their name as as-
signee in the blank endorsement, but afterwards re-
turned the certificate to plaintiffs and refused to pay the
price thereon. It seems that there was another cor-
poration by the name of "Consolidated Arizona Cop-
per *Smelting* Company" and the New York firm made
a mistake in the name of the corporation and thought
it was dealing with a certificate of stock in that com-
pany.

There is nowhere in the case any evidence tending
to show that defendant had any knowledge whatever of
any relationship between plaintiffs and the New York
firm. Defendant made no representations concerning

said stock, nor was there any fraud or deceit upon her part. There was no mistake on the part of plaintiffs for they had the stock certificate before them and wired. the *exact* name of the company to the New York firm and the New York firm in the two telegrams concerning the price stated the name of the company exactly. And after the New York firm received the stock certificate they inserted their name in the blank assignment. Hence there was no mutual mistake between plaintiffs and defendants nor was there any unilateral mistake made by either of the parties hereto and there is no claim that there is any fraud or deceit upon the part of defendant. Indeed there could be none since she, a woman and apparently unexperienced in business, merely took the certificate of stock to the plaintiffs, turned it over to them and took what was offered and given her therefor.

The petition charges that defendant employed plaintiffs to sell for her 1000 shares of Consolidated Arizona Copper Mines Company'' stock; that pursuant to such employment plaintiffs sold the same in New York through a brokerage firm of that place; that plaintiffs received the certificate of stock from defendant and paid her $1167.10 and forwarded said certificate to the firm in New York, and *they,* the New York firm, wired that *they* had understood the shares they had been ordered to sell were shares of ''Consolidated Arizona Copper *Smelting* Company'' stock, that thereupon plaintiffs demanded the return of the money which the defendant refused to do and they offered to return the stock. In other words, the petition states no fraud or deceit in the matter, no mistake on the part of either plaintiffs or defendant, but does show that whatever mistake, if any there was, was the mistake of the New York firm; while the evidence not only shows these facts, but furthermore discloses that whatever mistake the New York firm made, it was one of their own *negligence,* for they were given the *correct* name of the stock offered and *used that name themselves* when they replied naming the price.

The petition does not disclose that plaintiffs were the agents of both defendant and the New York brokers; and, as stated, the evidence shows that defendant knew only that the stock was being sold in New York. Indeed, the New York firm bought the stock themselves since they inserted their name in the blank assignment. [Keller v. Eureka, etc., Mfg. Co., 43 Mo. App. 84, 88.] So that at best, the evidence shows that the defendant sold, through plaintiffs, a certificate of stock to the New York firm, and the plaintiffs, being acquainted with and having confidence in the firm's meeting its obligations, and according to the usual practice in such matters, paid defendant the money therefor, and then when the New York firm discovered that *it* has made a mistake, (and that through no other cause than their own negligence), it refuses to pay; whereupon plaintiffs sue to recover of defendant on the ground of mistake.

It would seem that the petition stated no cause of action in equity for a rescission of the contract on the ground of mistake. [Benn v. Pritchett, 163 Mo. 560, 571; Mason v. Commerce Trust Co., 192 Mo. App. 528, 582; Meek v. Hurst, 223 Mo. 688, 696; Grand Lodge, etc., v. Sater, 44 Mo. App. 445, 453; Robinson v. Karns, 250 Mo. 663, 675; Doughery v. Doughery, 204 Mo. 228, 240.]

But aside from, and without regard to, the sufficiency or insufficiency of the petition, the evidence does not disclose a cause of action in equity against the defendant. For it is beyond question that the only one who made a mistake, if one was committed, was the New York firm who, so far as defendant was concerned (and the evidence itself tends to show this), was the purchaser of the stock. Neither the plaintiff nor defendant did anything to mislead the purchaser. It had the facts fully before it and the telegrams which passed to and fro admit of no misunderstanding. If the purchaser made a mistake it was wholly its own fault which ordinary diligence would have obviated. Hence, equity cannot relieve against it. [Story on Equity (14 Ed.), sec. 218; 20 Amer. & Eng. Ency. of Law, (2 Ed.),

831; Brown v. Fagin, 71 Mo. 563, 569.; Betzler v. James, 227 Mo. 375, 392.] That plaintiffs have no cause of action against defendant will more readily appear if we leave plaintiffs out of consideration and treat the transaction as, if defendant had herself sold the stock to the New York purchaser, and in fact this is what was done, the defendant having done what she did through plaintiffs. Suppose defendant had herself sold the stock to the purchaser under the·same circumstances as did the plaintiffs, and suppose the purchaser had paid for it with his eyes open but by a negligent mistake (as he did agree with plaintiffs to do), could the purchaser in that event have turned and sued defendant to recover the money so paid? We think not, for the mistake, if there was one, was wholly that of the purchaser and a result of his own negligence. Defendant in no way participated therein nor did she do anything to mislead or deceive the purchaser. Now, merely because the plaintiffs, in accordance with the usual custom in such cases, advanced the money and paid it to defendant for the purchaser, gives them no better rights or claim against the defendant than the purchaser would have had if it had paid defendant.

Plaintiffs doubtless have a cause of action at law against the New York purchaser since they dealt with each other as principals without disclosing that they were acting as agents or giving the names of their respective principals. They were, therefore, primarily obligated to each other as principals. [Dos Passos on Stock Brokers and Stock Exchanges (2 Ed.), 75; 26 Am. & Eng. Ency. of Law (2 Ed.), 1056; Thompson v. McCullough, 31 Mo. 224, 225; Hamlin v. Abell, 120 Mo. 188, 198; Coggburn v. Simpson, 22 Mo. 351.]

There was no error in the exclusion of evidence since that offered and excluded in no wise changed the conclusive effect of the testimony offered by plaintiffs and admitted by the court.

We think the trial court ruled correctly on the demurrer, and hence affirm the judgment. The other judges concur.