CAMERON STATE BANK, Respondent,

v.

John C. SLOAN et al., Appellants.

No. KCD 28233.

Missouri Court of Appeals,
Kansas City District.

Dec. 5, 1977.

Richard G. Poland, Cameron, for appellants.

Harold L. Miller, Robison & Miller, Maysville, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special JJ.

WELBORN, Special Judge.

Action to void release of deed of trust and cancellation of note given which it secured on grounds that note had been marked "paid" by mistake. Defendants counterclaimed for $10,000 actual and $250,000 punitive damages, alleging that "mistake" relied upon was result of gross and wanton negligence on part of holder of note. Upon trial, court sustained plaintiff's motion for directed verdict on counterclaim and found in favor of plaintiff on its petition. Defendants have appealed.

On February 4, 1972, Melvin C. Sloan executed a note for $10,000 evidencing an indebtedness to the Cameron State Bank of Cameron, Missouri. Sloan also gave a deed of trust on property in Caldwell County as security for payment of the note.

Melvin C. Sloan died testate, May 30, 1974. His sons, John C. Sloan and Douglas C. Sloan, were devisees of their father's real property, including the tract covered by the deed of trust. John was appointed executor of his father's estate.

At the time of his death Melvin C. Sloan was indebted to the Cameron State Bank on account of other notes. Sloan had taken out $10,000 credit life insurance and when the proceeds of that policy were received by the bank on July 5, 1974, the sum was applied against two notes. On July 8, 1974, at the request of John Sloan, the application of the proceeds of the policy was changed to other notes. None of the insurance proceeds was applied to the $10,000 note, on which there was at that time a balance of $8,000 due.

The $10,000 note was included in a participation agreement between the First National Bank of Braymer and the Cameron State Bank. The latter bank retained the note and collected the principal and interest payments and remitted them to the Braymer Bank. On July 8, 1974, the indebtedness was sold to the Braymer Bank. For some reason, the note was not delivered to the Braymer Bank, but the Cameron State Bank "zeroed out" the indebtedness on its books.

On July 10, 1974, an officer of the Cameron State Bank discovered the $10,000 note in its files and in view of the record on which the loan had been "zeroed out" marked the note "Paid."

In October, 1974, the presence of the note marked "Paid" in the Cameron Bank files came to the attention of Mr. Carl E. Reynolds, Vice-President and Cashier of the Cameron Bank. He wrote a letter to John Sloan on October 17, 1974, advising him that the "real estate loan which your father had with our bank was paid off last July by the insurance company." He stated that interest in the amount of $275.29 was owing as of July 8. John Sloan came to the bank on October 21, and paid the interest demanded. The bank sent the note to the Caldwell County Recorder of Deeds for release of the deed of trust. The deed of trust was released and the Sloan brothers received the note marked "Paid" and the released deed of trust.

In January, 1975, the Sloan brothers sought a loan from the Kingston Bank and in their application described the real estate owned by them as free and clear of encumbrances. An officer of the Kingston Bank checked and discovered that the Braymer Bank records showed that they had an unpaid "participation" loan for $8,000, secured by a deed of trust on the property. The Sloans produced the note marked "Paid" and the released deed of trust. Braymer Bank then demanded that Cameron pay the loan. Cameron repurchased the loan from Braymer.

Officers of the Cameron Bank got in touch with the Sloans and told them that there had been a "big mistake" on the $8,000 loan. The Sloans were asked to reaffirm the note and make a new note but they refused to do so because the bank did not explain the "mistake" to their satisfaction.

On March 6, 1975, the Cameron State Bank filed its petition in this action, seeking to set aside the release of the deed of trust and to void the cancellation of the note on the ground of mistake. The petition also sought foreclosure of the deed of

**566**

trust. An answer in effect a general denial was filed by John C. Sloan as "de facto Executor of the Estate of Melvin C. Sloan." The answer of John C. Sloan and Douglas C. Sloan as individuals incorporated the answer of John as executor. The individuals also counterclaimed, alleging that, as a result of the bank's advising them that the $8,000 due on the real estate loan had been paid by application of proceeds of a credit life insurance policy, the inventory of their father's estate was amended to show additional assets in that amount, resulting in defendants being required to pay additional court costs, attorney's fees and Missouri inheritance tax in the administration of the estate. The counterclaim alleged that, if the "mistake" relied upon by the bank was in fact made, "said 'mistake' as to these defendants was so incredible as to amount to gross and wanton negligence in utter disregard to these defendants' rights." The counterclaim sought $10,000 actual and $250,000 punitive damages.

At the conclusion of a trial to a jury the trial court sustained plaintiff's motion for a directed verdict on the defendants' counterclaim. Plaintiff dismissed its count for foreclosure. The jury was then dismissed because the count remaining was in equity.

The court found that the release of the deed of trust and cancellation of the note were the result of a "bilateral mistake" and declared these acts void and of no effect.

In this court, appellants contend that the trial court erred in voiding the cancellation of the note and release of the deed of trust on the grounds of bilateral "mistake" because the mistake was unilateral, having been committed solely by the bank, and that under the law the bank was not entitled to relief from its unilateral mistake in the facts and circumstances of this case.

Appellants' argument is bottomed upon what was said in *Brown v. Fagan,* 71 Mo. 563 (1880), and subsequent cases following Brown, such as *Croy v. Zalma Reorganized School District R–V of Bollinger County,* 434 S.W.2d 517 (Mo.1968), and *Barrett, Fitch, North & Co. v. Hudson,* 403 S.W.2d 944 (Mo.App.1966).

In Brown, upon the dissolution of a partnership, Fagan had given Brown a note in settlement of their partnership account. When Fagan brought suit on the note, Brown set up the defense that upon the dissolution of the firm he had mistakenly assumed that the partnership had made money whereas in fact it had not and he asked that the suit on the note be enjoined until there had been an accounting of the partnership affairs.

In upholding the dismissal of the equitable defense and affirming the judgment for plaintiff, the court said (71 Mo. 568):

"It is not claimed that this evidence shows that any fraud was practiced by plaintiff in the procurement of the execution of the note sued on; but it is insisted that it does show that the note was given under a mistake of facts which constituted the inducement for the execution of it, and in such cases equity will afford relief. It may be conceded to be established law that equity will relieve against a contract which is founded on a mutual mistake of the facts which constitute the essence and basis of the contract; but it is equally well settled that equity will not afford relief in cases of mistake of facts, when the party entering into it had the means of knowing the true state of facts, and by gross negligence failed to use such means. Though a court of equity will relieve against mistake, it will not assist a man whose condition is attributable to that want of due diligence which may be fairly expected from a reasonable person; and gross negligence is presumed when a man is ignorant of the general laws of his country or of his own affairs. Kerr on Fraud and Mistake, pp. 406, 507. Mr. Story, in treating this subject, in vol. 1, Sto.Eq., § 146, observes: 'It is not, however, sufficient in all cases to give the party relief, that the fact is material; but it must be such as he could not, by reasonable diligence, get knowledge of when he was put upon inquiry; for it, by such reasonable diligence, he could have obtained knowledge of the fact, equity will not relieve him, since that would be to encourage culpable negligence.'"

Croy noted what had been said in Brown about mutual mistake but Croy did not actually involve a mistake by either party, and was concerned with a transaction in which a party to a sale of real estate made an unwarranted assumption as to the property being sold, the purchaser having been fully aware of the uncertainty which was present. See *Rainey v. Foland,* 555 S.W.2d 88 (Mo.App.1977).

In the *Barrett, etc.,* case, a broker purchased stock from a customer on the erroneous assumption that the stock was in a Texas corporation whereas it was in a Colorado corporation of the same name. The broker sold the stock to another broker who informed the broker-seller that the stock was not that of the Texas corporation and returned the stock. The broker-seller was obliged to purchase stock of the Texas corporation elsewhere in order to fulfill its contract. It then sought to rescind the purchase from the customer on the grounds that the parties were mutually mistaken as to the true identity of the shares sold. In holding that the broker could not rescind the contract, the court pointed out that it had the stock certificate in its possession for seven days, that it knew that the stock for which a price was quoted was a Texas corporation, that the certificate in its possession showed that it was in a Colorado corporation, yet the broker proceeded with the transaction "without bothering to make the small effort which would have disclosed the 'mistake.'" 403 S.W.2d at 946[1].

The court pointed out that the owner who offered to sell the stock offered it for sale without regard to whether it was in a Colorado or a Texas corporation. He was not aware of the purchaser's assumption that his stock was in the Texas corporation. The court concluded that there was no mutual mistake of fact justifying rescission.

Language found in these cases does lend some support for appellants' position. The courts do speak of the necessity for a mutual mistake as a basis for relief and state that relief should be denied the party who fails to avail himself of information in his possession which would reveal the facts.

Here there is no doubt that more careful examination of the bank's records would have disclosed that the note had been sold to the Braymer Bank and that it had not been paid by the maker. However, the fact that a miscalculation was made by one party and involved negligence on his part does not preclude a finding of mutual mistake.

An example of this is found in *New York Life Ins. Co. v. Gilbert,* 215 Mo.App. 201, 256 S.W. 148 (1923). In that case, the holder of a policy of life insurance, in the hands of the insurer because the insured had borrowed on the policy, inquired of the insurer what amount of paid-up insurance he would receive if the value of the policy was first applied to satisfaction of the loan. The insured was advised that he would receive $768 paid-up insurance in such case. The insured advised the company that he would accept those terms and when the interest on the loan was not paid, the indebtedness was cancelled and the policy returned to the insured on January 12, 1921, indorsed for paid-up insurance of $768. On February 2, 1921, the insurer discovered that it had made an error in computing the amount of paid-up insurance and that the amount should have been $308. The insurer requested return of the policy for correction of the indorsement but the insured refused to surrender the policy. The insurer then brought suit to reform the indorsement on the grounds of mutual mistake. As does the appellant here, the insured took the position that he knew nothing about the calculation made by the insurer and had nothing to do with the mistake.

In granting relief the court concluded that the mistake was mutual "in that the insured mistakenly supposed that the amount indorsed on the policy was properly calculated as to what he was entitled to under the policy whereas it was not: * * ." 256 S.W. 151. The court also noted (256 S.W. 152):

" * * * There was no injury caused the insured by the mistake made in the case at bar. No rights of a third party have intervened, nor have defendants acted to their injury upon the assumption that the

amount indorsed on the policy was the true amount of paid-up insurance. The insured thought that the calculation was correct; he did not ask for any more than he was entitled to under his policy; plaintiff discovered the mistake in a short time and immediately notified the insured and sought to have the policy corrected at a time that to have done so would have caused no injury to the insured or his beneficiary."

■ In this case, the bank acted on the mistaken belief that the note had been paid. The appellants accepted the benefit of the bank's action on the same erroneous assumption. True, the erroneous assumption arose because of negligence on the part of the bank, but that fact does not permit appellants to gain an unconscionable advantage to which they are not entitled when there has been no change of position in reliance upon the bank's act. In the case of *Troll v. Sauerbrun,* 114 Mo.App. 323, 89 S.W. 364 (1905), the holder of a deed of trust released it on the mistaken belief that a previous encumbrance had been discharged. When the error was discovered, an action was brought to set aside the release. The holder of the previous encumbrance who sought the benefit of the mistake complained that the plaintiff was entitled to no relief because the release of the deed of trust was the result of negligence. In rejecting this contention the court said (89 S.W. 365–366):

" * * * His negligence did nobody but himself any harm, and Sauerbrun cannot take advantage of it to have his subsequent deed of trust take the place of Troll's prior one and thus cause a loss to plaintiff. Such a result would be unconscionable. To reinstate the lien inadvertently released will not prejudice the rights of Sauerbrun in the slightest degree, but will leave him with the same security he enjoyed before that release was made. Troll was not culpably careless in making the mistake he did, considering the fact that there were so many deeds of trust with the same trustee. Any one was liable to get confused about them. It is not every degree of negligence which will prevent a court of equity from granting a relief in a case like this. It is said by a standard author that the best authorities lay down the rule that the neglect must amount to the violation of a positive legal duty; that even clearly established negligence will not be sufficient ground for refusing relief, if the other party was not prejudiced thereby. 2 Pomeroy, Eq. Juris. (3d Ed.) § 856, citing *U. S. Bank v. Bank of Ga.,* 10 Wheat. 333, 6 L.Ed. 334; *Mayer v. Mayor, etc.,* 63 N.Y. 455; *Snyder v. Ives,* 42 Iowa 157."

■ The last two discussed cases involved factual situations much nearer to the facts of this case than did the cases relied upon by appellants. While it may not be possible to reconcile all that was said in those cases, nevertheless, this court cannot find that the trial court in this case erroneously declared the law or erroneously applied the law and its judgment will be affirmed.

Defendants' counterclaim alleged that, as a result of the bank's informing them that credit life insurance had paid the $8,000 due on the note, the inventory of their father's estate was amended to show as an asset $8,000 credit life insurance proceeds. It further alleged that by reason of the amended inventory defendants were required to pay additional court costs, Missouri inheritance tax and attorney's fees in the administration of the estate. In dismissing the counterclaim, the court stated that there had been neither allegation nor proof of special damages. The counterclaim did sufficiently allege items of special damages. Rule 55.19. The only proof offered was testimony of John C. Sloan that because of the information regarding the payment of the loan, an amended inventory was filed, eliminating the $8,000 liability, thereby increasing the value of the estate by $8,000. The clerk of the probate court was called as a witness and testified that because of the additional $8,000 the estate was required to pay $80 in additional inheritance tax to the State of Missouri. However, the claim for damages was asserted by the individual appellants and, other than the fact that they

were the sole heirs, there was no proof as to what, if any, effect the payment of additional tax had upon their share of the estate. (The erroneously paid tax was subject to refund. § 145.250, RSMo 1969.) Therefore, the trial court's ruling on this score has not been shown to have been erroneous.

■ Appellants also contend that the trial court's conclusion that there was no evidence of wanton negligence was erroneous. Other than the bare assertion that the "bank's incredible bookkeeping method, as elicited from its own witnesses, is so bizarre as to defy description * * *," the appellants offer no argument or authority in support of this contention. Such a bare assertion will not suffice to sustain the appellants' burden in this court of demonstrating error on the part of the trial court.

Judgment affirmed.

All concur.