STATE of Missouri ex rel. MISSOURI STATE HIGHWAY COMMISSION, Plaintiff-Respondent,

v.

HENSEL PHELPS CONSTRUCTION COMPANY and Aetna Casualty and Surety Company, Defendants-Appellants.

No. 63307.

Supreme Court of Missouri, En Banc.

June 8, 1982.

Charles E. Patterson, David J. Kornelis, Kansas City, for defendants-appellants.

Bruce A. Ring, Curtis F. Thompson, Dennis J. Redel, Jefferson City, for plaintiff-respondent.

MORGAN, Judge.

On July 31, 1974, the Missouri State Highway Commission issued a notice of bid letting for the construction of lighting and decking on a bridge over the Mississippi River between Missouri and Tennessee. The construction of the bridge was a joint project between Missouri and Tennessee; however, the contract was Missouri's responsibility and it advertised the project and received bids therefor.

The Commission furnished a proposal form explaining the details of the particular job to those interested in bidding. The *Missouri Standard Specifications for Highway Construction*, a guide to the bidding procedure, was incorporated into the bid documents by reference. The specifications indicated that each bid was to be accompanied by a certified check as a bid bond, guaranteed by a surety company, equal to five percent of the total bid. The bidder could withdraw the bid at any time *prior* to the opening of the bids, but at that time the bids became irrevocable. If a bid was accepted, and the bidder did not execute the contract within fifteen days, the contract was deemed cancelled and the bid bond was to be forfeited.

On August 20, 1974, Hensel Phelps Construction Company, based in Greeley, Colorado, sent two employees to the construction site where they spent five to six hours. At this time they determined the Tennessee side of the river to be the best location to begin work, because: (1) the Tennessee side was twelve to fifteen feet higher than the corresponding point in Missouri and subject to less flooding; (2) there was power available on the Tennessee side; and further, (3) most of the materials would be coming from Tennessee suppliers. The only transportation across the river of which they were aware was by ferry about five to ten miles south of the location.

The Hensel Phelps employees spoke with Joe Davidson of the Highway Department and asked if he knew of any "union problems" in the area. Davidson answered that the only one of which he was aware involved overtime pay on Saturday. They asked the same question of Gene Penzel of Penzel Construction Company (a competitor on the bid who was on the site) who answered that there were no problems. They then asked the officer manager of Beasley Construction Company if he knew of any problems and he also answered that there were no labor problems of which he was aware. They further reviewed area union agreements to gain an understanding of the wage rate, manning requirements, crew requirements and jurisdictional requirements. Yet they did not speak with any union officials or workers.

In preparing the proposal, a question arose as to the payment of sales taxes in Missouri and Tennessee. The employees referred to *Summary of State Regulations and Taxes Affecting General Contractors*, a book on sales tax laws in different states. Because the job was to be administered by Missouri, Hensel Phelps' representatives assumed that Missouri's sales tax law would apply, although they knew most of the materials would be purchased in Tennessee. The Missouri provision reads:

Sales to contractors for permanent installation in the performance of contracts, *not* exempt. Sales to Federal Government, state, political subdivisions and educational, religious, and charitable organizations, exempt. (Emphasis in original.)

Thinking this provision ambiguous, an employee called the Missouri Highway Department and asked them for an interpretation. He talked to someone from the plans and specifications division, who answered that they didn't know if the purchases would be exempt. The Hensel Phelps employees then determined that sales to Hensel Phelps would be exempt.

Hensel Phelps submitted its bid of $4.5 million along with a bid bond of $225,000, guaranteed by Aetna Casualty and Surety Company, to the State Highway Commission. The bids were opened August 30, 1974, and Hensel Phelps' bid was the lowest. The next lowest bid was $4,990,536.44. The Highway Commission's latest estimate was $4,489,000. Upon noticing the 11% difference between the two low bids, the Hen-

sel Phelps representatives became concerned, although an 11% difference was not unusual. They, thereafter, began an immediate review of the bid.

The employees returned to the construction site on September 5, 1974, and asked the project manager of Beasley Construction Company and the superintendent of Massman Construction Company if they had any labor problems. They answered that they did.

At this time the representatives of Hensel Phelps learned that they would be required to transport workers from the Missouri side of the river to the Tennessee side, and that they would be required to pay the workers one way during transit.

This requirement stemmed from an "area precedent" at the construction site. Massman Construction Company, that constructed the substructure of the bridge, had agreed with the unions that it would pick up the workers from the Missouri side and transport them across the river, paying them one way during transit. The result of this oral agreement apparently set an area precedent that future contractors would be expected to follow. This would lead to additional costs; including renting a vessel, hiring operators for the boats, paying the workers one way, and acquiring longshoreman's and marine insurance.

Hensel Phelps' representatives talked to the carpenters' business agent in Sikeston and the assistant laborers' agent in Cape Girardeau. Both indicated that the labor precedent would be a problem, but the representatives made no attempt to negotiate with the unions any further.

After determining that there would be additional labor costs, they further discovered that their purchases in Tennessee would not be tax exempt.

Hensel Phelps recalculated its bid and determined the new total to be $620,404 over the amount submitted in its actual bid.

They telephoned the Highway Commission on September 9, and expressed a desire to withdraw their bid. The next day a Hensel Phelps representative appeared at the Highway Commission, requested the bid be withdrawn, and indicated the mistakes made in its bid.

On September 11, the Highway Commission met and was informed of Hensel Phelps' request to withdraw its bid. The bid of Hensel Phelps was accepted subject to concurrence by the Department of Transportation of Tennessee. The Highway Commission wrote the Tennessee Department of Transportation and indicated Hensel Phelps' alleged errors. The Tennessee department concurred in the acceptance of the bid. On October 2, 1974, the Commission sent contract documents to Hensel Phelps for execution. Hensel Phelps replied that they wanted to be relieved of their responsibility to proceed with the contract.

Hensel Phelps appeared before the Commission on October 9. On October 11, the Commission notified Hensel Phelps the request to withdraw was denied. On October 24, Hensel Phelps met with the Commission and offered to enter a contract under two conditions: (1) that Hensel Phelps be allowed additional costs for the transportation of workers across the river; and (2) the Commission assured a seasonal time extension if the project could not be worked due to floods. The commission rejected both of the proposed modifications.

On December 3, 1974, the Highway Commission made formal demand for payment of the bid bond in the amount of $225,000. The request was refused and suit followed.

After a jury verdict for the State Highway Commission and subsequent denial of defendants' motion for new trial, defendant Hensel Phelps appealed. It contends the trial court erred when it denied defendants' motion for directed verdict because the evidence indicated it was entitled to withdraw its bid without forfeiture of its bond. Next, Hensel Phelps argues the trial court erred when it gave plaintiff's verdict director because it did not include the requested "tail" and in excluding defendants' exhibits 2, 3, and 5. It is also claimed that the trial court erred in permitting a portion of the Highway Commission's closing argument.

■ The question of whether or not a contractor who has submitted a bid on a public contract may thereafter be allowed to rescind its bid on the basis of its unilateral mistake is apparently a question of first impression in Missouri. If a contractor is allowed to rescind its bid, the bid bond would be cancelled. Certainly, the state may not require forfeiture of the bid bond either as a penalty or liquidated damages if the contractor has no legal obligation to fulfill its bid. *Balaban-Gordon Co. v. Brighton Sewer District*, 41 App.Div.2d 246, 342 N.Y.S.2d 435 (1973). Because this is a suit for forfeiture of the bond, it is necessary first to determine whether contractor Hensel Phelps is entitled to rescind its bid.

Defendant asserts that a bid based on a unilateral mistake may be withdrawn without forfeiture of its bid bond if the following conditions are met:

(1) the mistake is material,

(2) the mistake must not be the result of complete indifference, conscious disregard of the facts on lack of good faith; and

(3) it must be possible to restore the other party to status quo.

Defendant directs the Court to cases from other jurisdictions which support this view.

Plaintiff claims an added element is that the mistake must be obvious. The Highway Commission did not know when it opened the bid that there had been a mistake. The Commission checked the calculations and searched for omissions and found none. Furthermore, a difference of 11% between the lowest and next lowest bids was testified to as not being necessarily unusual.

Generally, the mistaken party may be relieved of its obligation if the mistake is not obvious, if the agreement is entirely executory, if the mistake is substantial, and if the mistake is the result of a *clerical* or *computational* error or a misconstruction of the specifications. However, rescission is not allowed for a mistake of judgment or a lack of investigative effort.

The purpose of drawing a distinction between mistakes of judgment and clerical mistakes was described by the Supreme Court of California in *M. F. Kemper Construction Co. v. City of Los Angeles*, 37 Cal.2d 696, 235 P.2d 7 (1951):

There is a difference between mere mechanical or clerical errors made in tabulating or transposing figures and errors in judgment, as, for example, *underestimating the cost of labor and materials.* [Emphasis added] The distinction between the two types of errors is recognized in the cases allowing rescission and in the procedures provided by the state and federal governments for relieving contractors from mistakes in bids on public work. [Citations omitted] Generally, relief is refused for error in judgment and allowed only for clerical or mathematical mistakes. [Citations omitted] Where a person is denied relief because of an error in judgment, the agreement which is enforced is the one he intended to make, whereas if he is denied relief from a clerical error, he is forced to perform an agreement he had no intention of making.

235 P.2d at 11.

Clearly, Hensel Phelps' mistake was not the result of a clerical error or computational error or misconstruction of the specifications. The mistake, if any, was made in the estimation of labor costs and the incorrect determination that purchases would be exempt from either Missouri or Tennessee taxes. They are thus to be classified as mistakes of judgment, which generally do bar relief.

In *Osberg Construction Co. v. City of Dalles*, 300 F.Supp. 442 (D.Or.1969), the contractor made several mistakes in its bid, including its estimation of $5,000 for the diversion of water during the construction of a dam. The bidder notified the city after the opening of the bids that he had made mistakes, but the bid was accepted four days later. The bidder was not relieved of his obligation as the court noted that the method of diverting water was left entirely to the contractor and therefore the

mistake could only be classified as a mistake of judgment. The defendant's bid bond was forfeited. The facts in *Osberg* are similar to those of the case at bar. The estimation of labor costs and the calculation of sales tax were left entirely to the bidding contractor. As such, Hensel Phelps' mistakes do not appear to entitle it to relief.

On Hensel Phelps' behalf, it should be noted that some courts hold that where a mistake is material, it is unconscionable to deny rescission of the contract and to allow forfeiture of the bid bond. Hensel Phelps' mistake of "judgments" resulted in its bid being $620,404 less than it later estimated the actual cost would be. This would have exceeded the anticipated profit of $437,231. Hensel Phelps cites many cases in which the bidder was allowed to rescind its bid. However, these cases can be distinguished from the case at bar, as the mistakes resulted from an omission of an intended item from the proposal: *Baltimore County v. John K. Ruff, Inc.,* 281 Md. 62, 375 A.2d 237 (1977); *Wallace Industrial Constructors v. Louisiana Electric Cooperative, Inc.,* 348 F.Supp. 675 (M.D.La.1972), aff'd *Wallace Industrial Constructors v. Louisiana Electric Cooperative,* 472 F.2d 1407 (5th Cir. 1973); *State by State Highway Comm. v. State Construction Co.,* 203 Or. 414, 280 P.2d 370 (1955); *Boise Jr. College District v. Mattefs Construction Co.,* 92 Idaho 757, 450 P.2d 604 (1969); *Dick Corp. v. Associated Electric Cooperative, Inc.,* 475 F.Supp. 15 (W.D.Mo. 1979); *M. F. Kemper Construction Co. v. Los Angeles, supra*; or, the mistakes resulted from a clerical error: *City of Baltimore v. De Luca-Davis Construction Co.,* 210 Md. 518, 124 A.2d 557 (1956); *State Board of Control v. Clutter Construction Corp.,* 139 So.2d 153 (Fla.App.1962); *M. J. McGough Co. v. Jane Lamb Memorial Hospital,* 302 F.Supp. 482 (S.D.Iowa 1969); or, the contractor misconstrued the specifications: *Balaban-Gordon Co. v. Brighton Sewer District, supra; Connecticut v. F. H. McGraw & Co.,* 41 F.Supp. 369 (D.Conn. 1941); *President and Council of Mount St. Mary's College v. Aetna Casualty & Surety Co.,* 233 F.Supp. 787 (D.C.Md.1964).

It should be noted also that some jurisdictions will not even allow rescission in cases involving "mechanical" mistakes like those just noted: *Board of Education v. Sever-Williams,* 22 Ohio St.2d 107, 258 N.E.2d 605 (1970); *City of Newport News v. Doyle & Russell, Inc.,* 211 Va. 603, 179 S.E.2d 493 (1971); *A. J. Colella, Inc., v. County of Allegheny,* 391 Pa. 103, 137 A.2d 265 (1958); *Daddario v. Town of Milford,* 296 Mass. 92, 5 N.E.2d 23 (1936); *Triple A Contractors, Inc. v. Rural Water District,* 226 Kan. 626, 603 P.2d 184 (1979).

In *Triple A Contractors, supra,* the Kansas Supreme Court stated at 628, 603 P.2d 184:

> If a person, firm or corporation submits a sealed bid on public works, the principal contended for by the contractor, namely, that after all the bids are opened he can withdraw his bid under plea of clerical mistake, would seriously undermine and make the requirement of system of sealed bids a mockery; it could likewise open wide the door to fraud to contractors and/or between contractors and the public authority. What is the use or purpose of a sealed bid if the bidder does not have to be bound by what he submits under seal? What is the use or purpose of requiring a surety bond as further protection for the public, i.e., municipality, if a bidder can withdraw his bid under plea of clerical mistake, whenever he sees that his bid is so low that he must have made a mistake of judgment?
>
> ... the very purpose of the bid bond was to require the bidder to go forward with the construction contract regardless of his errors in arithmetic or judgment.

■ Although Hensel Phelps' mistake was one involving a substantial amount of money, and the forfeiture of a $225,000 bid bond, it does not appear Hensel Phelps is entitled to relief. The defendant's mistake was in its estimation of costs, and is not the type relieved at equity. Furthermore, it does not appear that Hensel Phelps used diligence in determining whether any labor problems were present at the construction site. While this problem may have been

unique, future construction jobs may also present unique problems. Allowing contractors to rescind a bid when the contractor later learns of a new problem may in fact undermine the bidding process as the Kansas Supreme Court warned. Conversely, perhaps contractors will be encouraged to use greater care in preparing bids they submit to the state. Furthermore, a party executing a contract must exercise diligence in determining the facts relevant to the subject matter of the contract.

*Town of Lyndon v. Burnett's Contracting Co.*, 138 Vt. 102, 413 A.2d 1204 (1980), involved a mistake similar to the mistake of Hensel Phelps. The defendant submitted a bid for the construction of sewers and force mains. The defendant assumed the plaintiff possessed all easements necessary for completion of the job. Soon after its bid was accepted, it discovered that plaintiff lacked 14 easements. The court rejected defendant's claim of unilateral mistake, stating: "Although unilateral mistake does not preclude rescission, the rule is that where the mistake has resulted solely from the negligence or inattention of the party seeking relief, and the other party is without fault, relief should not be granted absent unusual circumstances which would make enforcement of the agreement manifestly unjust." *Id.* at 107, 413 A.2d 1204.

The mistake in the estimation of labor costs resulted in part from Hensel Phelps' failure to learn of the labor precedent in the construction area. The defendant's witnesses testified that Hensel Phelps had never bid on a project for the Missouri State Highway Commission. While making its investigation of the construction site, the chief estimator for Hensel Phelps asked Joe Davidson of the Highway Commission, Gene Penzel of Penzel Construction Company, and the office manager of Beasley Construction Company if they knew of any labor problems. They answered no. Because Hensel Phelps is a signatory with the Missouri Association of General Contractors, it requested and reviewed actual copies of the union agreements, which made no mention of where the workers were to report. Hensel Phelps asserts that this inves-

tigation of labor conditions was thorough; that it "cannot be faulted for not specifically asking about or looking for such a precedent"; that this precedent was contrary to general industry practice, and one that Hensel Phelps had not encountered before. Therefore, defendant claims it was reasonably diligent, without complete indifference or conscious disregard of the facts, and had acted in good faith.

However, it is significant that Hensel Phelps had never before bid on a job for the Missouri State Highway Commission, and it could be expected that they would ask more questions than normal. Hensel Phelps did not talk to *any* union officials or workers from Missouri during preparation of its bid even though it would have become a signatory on any union contract, and even though oral agreements are usually incorporated into a labor agreement. The labor agreement it did review did not indicate where the workers would report to work. At the time the bid was prepared, the nearest transportation across the river of which Hensel Phelps was aware was a ferry five to ten miles south of the bridge site. Furthermore, the defendant made no further investigation of labor problems when the competitor Penzel told him there were none and made an unfounded assumption that a competitor would "paint the bleakest picture possible" in an effort to cause the bid to be higher.

The defendant's second decisional error occurred in resolving the question of sales tax. Because the project was being administered by Missouri, Hensel Phelps assumed Missouri sales tax would apply. The applicable provision in the *Summary of State Regulations and Taxes Affecting General Contractors* states: "Sales to construction contractors for permanent installation in the performance of contracts *not* exempt." Despite the wording of this provision, the employees found it ambiguous, and contacted the Missouri State Highway Commission's plans and specifications department for help in interpreting it. The person from the department answered that he did not know if the sales would be exempt.

Hensel Phelps then erroneously determined that the materials would be exempt from the tax on the basis that it would be a sale to the state government.

Defendant argues that this misreading of the Missouri tax provision is understandable because it was the first time Hensel Phelps had submitted a bid to the Missouri State Highway Commission. Defendant argues it made a good faith effort to clarify the sales tax question but that the Commission gave it no guidance.

However, the language in the sales tax provision is clear and unambiguous. Hensel Phelps is a construction contractor who would be purchasing materials for the performance of a contract, and therefore its purchases clearly would not be exempt from tax. However, even if this were ambiguous and a company were in doubt about its application, it could easily have been expected to pursue the question further. Hensel Phelps only asked the question once without receiving either a positive or a negative answer. The defendant could have taken additional steps; that it did not must be considered. Furthermore, Hensel Phelps knew that most of its materials would be coming from Tennessee and should have known that Tennessee sales tax would apply. Surprisingly, the defendant does not indicate any attempt was made to ascertain the Tennessee tax.

Although we have not determined previously whether a bidder on a public contract may be excused from that obligation by reason of its unilateral mistake, the question of unilateral mistake in contracts is one that has been addressed many times by Missouri courts. It has been held continuously that a party will not be allowed to rescind its obligation in equity when its mistake has resulted from a failure to ascertain the true state of facts and, without inducement by the other party, neglects to avail himself of his opportunities for information. *Brown v. Fagan,* 71 Mo. 563 (1880); *Houston v. Welch,* 204 Mo.App. 279, 223 S.W. 1076 (1920); *Barrett, Fitch, North & Co. v. Hudson,* 403 S.W.2d 944 (Mo.App. 1966); *S. G. Payne & Co. v. Nowak,* 465 S.W.2d 17 (Mo.App.1971); *Cameron State Bank v. Sloan,* 559 S.W.2d 564 (Mo.App. 1977). Both errors made by Hensel Phelps in its submitted bid were made solely as a result of Hensel Phelps' failure to ascertain the true facts, and without any inducement or misrepresentation by the State Highway Commission.

Defendant contends the trial court erred in giving plaintiff's verdict director, Instruction No. 4, as it did not include the requisite "tail" referring to appellant's affirmative defense of mistake, which was submitted in Instruction No. 6.

Instruction No. 4, submitted by the plaintiff, reads:

Your verdict must be for plaintiff if you believe:

First, defendant, Hensel Phelps Construction Company submitted a bid to plaintiff for a highway construction project, and

Second, defendants, Hensel Phelps Construction Company, as principal, and Aetna Casualty and Surety Company, as suretys, entered into a bid bond agreement, and

Third, defendant, Hensel Phelps Construction Company, was the lowest responsible bidder for the highway construction project, and

Fourth, plaintiff accepted defendant Hensel Phelps Construction Company's bid for the highway construction project, and

Fifth, plaintiff requested defendant, Hensel Phelps Construction Company, to execute and deliver to plaintiff the contract, contract bond, and evidence of insurance coverage for the highway construction project, and

Sixth, defendant, Hensel Phelps Construction Company, failed to execute and deliver to plaintiff, the contract, contract bond, and evidence of insurance coverage for the highway construction project, and

Seventh, plaintiff made demand upon defendants, Hensel Phelps Construction Company and Aetna Casualty and Surety Company, for payment under the bid bond, and

Eighth, defendants, Hensel Phelps Construction Company and Aetna Casualty and Surety Company, refused to pay plaintiff under the bid bond.

Instruction No. 6 reads:

Your verdict must be for the defendants if you believe:

First, defendant Hensel Phelps mistakenly omitted certain costs from its bid; and

Second, the omission of the costs was a material mistake, and

Third, the mistake was not the result of complete indifference to or conscious disregard of the facts or lack of good faith.

■ Appellant contends that the omission of the phrase "unless you believe plaintiff is not entitled to recover by reason of Instruction No. 6," following the respondent's verdict director is reversible error. We have held that when the defendant's instruction submits an affirmative defense, it is error to give a verdict directing instruction for the plaintiff which does not include this "tail", as it results in a conflict between the two instructions. *Moore v. Ready Mixed Concrete Co.*, 329 S.W.2d 14 (Mo. banc 1959); *Ernst v. Schwartz*, 445 S.W.2d 377 (Mo.1969); *Trimble v. Sipes*, 506 S.W.2d 353 (Mo.1974). However, such holdings apply only if the defendant is entitled to the affirmative defense submitted in his instruction.

In *Clark v. Campbell*, 492 S.W.2d 7 (Mo. App.1973), the then Kansas City Court of Appeals held that plaintiff's failure to include the "tail" referring to defendant's instruction was not erroneous as a matter of law. Omission of the requisite "tail" certainly would not be reversible error where defendant was not entitled to the affirmative defense of unilateral mistake for its own errors in calculating the bid submitted. First, the instruction does not indicate that the mistake must be the type which allows relief; that is, that it was a clerical mistake, a mistake of omission, or a misconstruction of the specifications. Second, the paragraph that "the mistake was not the result of complete indifference to or conscious disregard of the facts or lack

of good faith," indicated the wrong degree of care in this type case. Thus, it was not error for Instruction No. 4 not to have a "tail" conditioning its effect on Instruction No. 6.

■ Hensel Phelps' next contention is that the trial court erred when it excluded defendant's exhibits 2, 3, and 5. Defendant claims these exhibits are relevant in that they tend to show both the fact of and the amount of its mistakes. Plaintiff contends their exclusion was not erroneous because there was never such an issue at trial in that the plaintiff never contended that defendant did not make the mistakes alleged.

Exhibit 2 is a copy of the Highway Commission's revised estimate for the deck work, electrical work and painting of the bridge. This estimate was made in January 1975 in preparation of the February 1975 reletting of the contract. Exhibit 3 was the Highway Commission's tabulation of bids on the bridge project received at the reletting. Exhibit 5 was a letter from a district engineer at the Commission concerning the subcontracting of the painting work on the bridge. Defendant claims these exhibits indicate that in January 1975 the Commission's estimate was virtually the same as Hensel Phelps' would have been had it been allowed to revise its bid.

These exhibits would not have been relevant. First, they were prepared five months *after* Hensel Phelps submitted its bid to the Commission. Second, it was not contended that Hensel Phelps had not made mistakes, nor was the amount of those mistakes an issue. It does not appear that the court abused its discretion in excluding the evidence, nor that the exclusion of the same prejudiced the defendant.

■ Hensel Phelps' final contention is that the trial court erred in permitting the Highway Commission to argue that:

[To] allow these defendants to withdraw its bid without forfeiting that bid bond would lead to uncertainty concerning performance of highway construction jobs, and it would result in making the competitive bidding process ... an empty gesture in futility.

Defendant contends that this argument went beyond the evidence, that it was an appeal to the juror's self-interest as taxpayers, and that it was contrary to the law as set forth in the instructions to the jury. Plaintiff contends this argument was made in direct response to defendant's own argument challenging the "fairness" of denying forfeiture of the bid bond.

The trial court has considerable discretion in monitoring the content of closing argument. Furthermore, counsel is allowed wide latitude in arguing legitimate inferences, *Norfolk and Western Railway v. Greening*, 458 S.W.2d 268 (Mo.1970). Nothing in the argument appears to be a direct appeal to the jurors as taxpayers, nor even to make them tax conscious. *Jones v. Kansas City*, 76 S.W.2d 340 (Mo.1934). We defer largely to the trial courts' rulings on the prejudicial effect, if any, of arguments of counsel. The trial court is in a more advantageous position to determine correctly whether or not the jury was improperly influenced. *Jones v. Kansas City, supra.* It does not appear that the trial court abused its discretion in this instance.

Thus, Hensel Phelps' mistake was not clerical in nature but an error in judgment as to the proper allocation of money to be spent on what is possibly the most important aspect of construction-labor costs. Its general questions reference "labor problems" were not evidence of sufficient diligence to preclude enforcement of the bid bond forfeiture, nor was its limited investigation of its tax exempt status adequate to avoid the consequences thereof. Finally, we find no abuse of discretion in the trial court's ruling regarding closing argument.

Finding no reversible error, the judgment should be and the same is affirmed.

All concur.