BY THE

## ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1923.

---

## RASMUS PETERSON, Respondent, v. THE COMMONWEALTH CASUALTY COMPANY, Appellant.

Springfield Court of Appeals, March 16, 1923.

1. **PLEADING: Amended Petition, not Demurred to and to Which Answer was Filed, Will be Sustained on Appeal.** Where, after defendant's combined general and special demurrer was filed to the original petition and sustained, and upon plaintiff's amended petition, defendant filed its answer, but, when the trial was commenced, objected to the introduction of evidence on the ground that the petition was too indefinite and uncertain, in this state of the record the sufficiency of the amended petition will be sustained by the appellate court.

2. **INSURANCE: Policy May be Reformed to Conform to Agreement of Parties.** An insurance contract may be so reformed by a court of equity as to conform to the agreement of the parties.

3. ————: **Evidence Held to Show Authority of Insurance Agent to Sell Kind of Policy Insured Claimed he Bought.** In a suit to have an accident insurance policy reformed and to recover thereon as reformed, evidence *held* to show authority on the part of insurer's agent to sell the kind of policy plaintiff claims to have bought.

4. ————: **Insurance Policy May be Reformed to Conform to Agreement of Parties, Though Mistake Was Due to Soliciting Agent Without Authority to Issue Policy.** An insurance policy may be reformed where it does not conform to the agreement of the

parties, though the mistake, so far as the insurer is concerned, was that of a mere soliciting agent with no power to issue a policy.

5. REFORMATION OF INSTRUMENTS: Application for Insurance is Given Great Weight in Determining Intention of Parties in Suit for Reformation. The application for insurance is usually given great weight in determining the intention of the parties in a suit for reformation.

6. INSURANCE: Duty of Insured to Take Steps to Correct Policy of Insurance not Containing Contract Agreed Upon. If the insurance policy received by insured did not contain the contract agreed upon it was insured's duty to take steps to correct it.

7. ————: Insured Held not Negligent, as Matter of Law, in Failing to Have Insurance Policy Conform to Agreement. When the policy of insurance not containing the contract agreed upon with the soliciting agent was received by insured, a farmer living fifteen miles in the country, not before October 24th, and his daughter read it over to him but he did not understand it, and on October 28th insured received an injury to his eye, held, though insured was required to act with reasonable promptness to have contract reformed, his injury occurred before it could be said as a matter of law that he failed to act within a reasonable time.

Appeal from the Circuit Court of Laclede County.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*C. Wm. Freed* and *A. W. Curry* for appellant.

It was insured's duty to examine the policy and if it did not contain the contract to take steps to correct. Aetna Life Ins. Co. v. A. Z. L. & S. Co., 169 Mo. App. 550, 154 S. W. 827.

*L. C. Mayfield* for respondent.

(1) By retaining the premium of $21 after appellant knew that the policy did not conform to the terms of the contract made by its agent with respondent, appellant is estopped from setting up as a defense, that the contract made by its said agent is beyond the scope of

the agent's authority and that the said contract of insurance is null and void.  Manning v. Insurance Co., 170 Mo. App. 678; Rogers v. Fire Insurance Co., 157 Mo. App. 671.  (2)  The appellate court should not disturb the judgment of any court unless it believes that error was committed by such court against the appellant or plaintiff in error which materially affects the merits of the case.  Sec. 1513, R. S. 1919.  (3)  In conclusion, we will say that the judgment of the trial court in reforming the policy and rendering judgment upon same as reformed, is clearly sustained in the decision written by Judge FARRINGTON, in the recent case of Horine v. The Royal Insurance Co., reported in 201 S. W. 958.  Therefore, we respectfully submit the cause of our client to the court.

BRADLEY, J.—Plaintiff filed his petition in three counts.  In the first he sought the equity side of the court and asked that an accident insurance contract be so reformed as to conform to the agreement he had with the soliciting agent.  In the second count plaintiff sought recovery on the reformed contract.  In the third count he sought recovery on the policy delivered to him; but this count was dismissed.  A jury was waived on the law count, and the whole cause tried before the court.  The court reformed the policy and found for plaintiff on the second count based upon the reformed contract.  Unsuccessful in motions for new trial and in arrest, defendant appealed.

Plaintiff lost an eye by concentrated lye blowing into it while he was engaged in pouring the lye into a barrel of slop, and sued to recover for the loss of his eye and for loss of time while disabled from the accident.  The policy which was delivered to plaintiff did not provide indemnity for the injury plaintiff received.  The application plaintiff signed was for limited accident and sickness insurance.  The application reads: ''I hereby apply for Limited Accident and Sickness Insurance in the Commonwealth Casualty Company to be based upon

the following representation of facts.'' Then follows questions and answers pertaining to plaintiff's occupation, etc.

Plaintiff contended that the agent who solicited and took his application represented that the company, under the policy he was offering, among other features, would pay plaintiff $1125 for the loss of an eye no matter where or how the loss occurred, and would pay him $50 per week for loss of time from such accident. The policy delivered contained this clause: ''Commonwealth Casualty Company, hereinafter called the company, in consideration of the statements in the application herefor, a copy of which application is endorsed hereon and made a part of this contract, and the payment of the premium sixteen ($16) dollars hereby insures Rasmus Peterson, hereinafter called the insured, subject to the provisions and limitations herein contained, for the term of one year from noon, standard time, at the place where insured resides, of the day this policy is dated, against (1) the effects of bodily injuries caused directly, solely and independently of all other causes, by external, violent and accidental means, which bodily injuries or their effects shall not be caused wholly or in part, directly or indirectly, by any disease, defect or infirmity, and which shall from the date of the accident result in continuous disability and also against the effect of sickness as follows: Part I.........................For the loss of one eye——$1,125 resulting within thirty days from date of accident solely from such injuries, and only when such injuries are sustained *while actually riding as a passenger* in a place regularly provided for the transportation of passengers only, within a railroad car, elevated, subway or interurban railroad car, street car or steamboat, provided by a common carrier for passenger service by reason of the material damage to any such car or steamboat; or for loss of time—fifty dollars ($50) per week.''

The application was taken October 12, 1921, and the policy is dated October 19th, and was delivered in a

few days thereafter. In a few days after the policy was delivered plaintiff lost his eye as stated. He alleges that the accident occurred on October 28th, but testified that the accident occurred a few days after the policy was delivered.

Defendant makes several assignments, which may be grouped as follows: That error was committed in overruling a demurrer to the amended petition; in not compelling plaintiff to make his petition more definite; in overruling a demurrer at the close of the case; in the admission of evidence, and in the refusal of a declaration of law.

Defendant did not file a demurrer to the amended petition. The record discloses that a combined general and special demurrer was filed to the original petition and sustained, and that thereupon plaintiff asked leave to amend, and amended the first count by interlineation. The record then recites that thereupon defendant filed its answer. When the trial was commenced defendant objected to the introduction of evidence on the ground that the petition was too indefinite and uncertain, but was overruled and excepted. In this state of the record we approve the sufficiency of the amended petition.

The assignment of substantial merit is the one based upon the demurrer at the close of the case. The agent who took plaintiff's application testified that he *understood* that he was selling plaintiff a policy that would give him $1125 for the accidental loss of an eye wherever the loss occurred or in whatever manner such loss occurred. Such is the effect of the agent's testimony. He was indefinite and uncertain in some matters, but was fairly definite as to what he *understood* about the policy he sold. On direct examination the agent testified as follows: "Q. Now if you offered to sell him an insurance policy state as near as you can if you represented or stated to him that it would cover all accidents or injuries that he might receive while he was there on his farm working, or around the place, or that if he lost an eye by acident or received any bodily injuries, and es-

pecially if he lost an eye by accident, if he would be paid the sum of $1125? A. That was my understanding. Q. Now, Mr. Shoemaker, go ahead and state, as near as you can, what you stated to Mr. Paterson. A. My statement to Mr. Peterson if he lost one eye he was to receive $1125. Q. Lost an eye how? A. By accident. Q. Where abouts? A. Anywhere, I suppose." This agent also testified that the contract or policy he sold defendant provided for a weekly indemnity of $25 while disabled from the accidental loss of an eye instead of $50 as testified to by plaintiff, and the court in rendering judgment took the agent's version of the agreement as to loss of time. Plaintiff and the agent practically agree in their evidence as to the policy sold and what plaintiff would receive for the loss of an eye, and disagree only in the feature relating to the loss of time. Plaintiff testified that he paid $21 for the policy he purchased from the agent. The agent makes no denial of this. The $21 payment is not mentioned except by plaintiff. The policy delivered, as shown supra, recites that the premium was $16.

Defendant introduced no evidence except the policy which was delivered, and relied upon that and upon the admission by plaintiff that he read the policy or had it read after receiving it and laid it by, and had made no complaint about it prior to his injury.

The judgment of reformation recites the finding of facts as follows: "The court further finds that on the 12th day of October, 1921, the duly authorized agent, with power to make a contract of insurance for defendant, entered into a contract with the plaintiff to furnish him a policy of insurance which policy was to be so written as to insure plaintiff against certain injuries received by external, violent and accidental means wherever he might receive the same. Among said injuries against which plaintiff was to be insured was the loss of an eye in which case defendant agreed to pay the plaintiff the sum of $1125 and defendant further agreed that as an additional indemnity, if plaintiff should become

sick by reason of any such injury inflicted upon him by external or accidental means, defendant would pay plaintiff the sum of $25 per week for fifteen consecutive weeks, provided plaintiff was totally disabled for that length of time. The court further finds that plaintiff accepted said contract of insurance and paid defendant the premium of $21 for the same which insured plaintiff from noon on the 19th day of October, 1921, to noon October 19, 1922. The court further finds that the policy delivered to the plaintiff by defendant did not express the mutual intent of the parties and that it did not contain the stipulations and agreements made and entered into by and between the parties, plaintiff and defendant, at the time said contract was made and premium paid.''

The agent, F. T. Shoemaker, testified that he represented the defendant at the time of taking plaintiff's application; that he made application for an agency and was duly appointed and licensed, and that after receiving his license and letters he went to see plaintiff. In an additional abstract filed by plaintiff is a letter from defendant to Shoemaker relative to his agency, and advising that when he had done certain things, ''We will then be able to get you a license from the Missouri Insurance Department which will give you full authority to sell insurance.'' All of the things referred to were done, and the agent received the license and whatever authority went with it and his appointment. The law of this State recognizes that an insurance contract may be so reformed by a court of equity as to conform to the *agreement* of the parties. In Horine et al. v. Royal Ins. Co., 199 Mo. App. 107, 201 S. W. 958, Judge FARRINGTON discussed this question at considerable length, and it could serve no useful purpose to make lengthy repetition here. In the Horine Case it is said: ''The rule in Missouri seems to be that the evidence must be clear, cogent and convincing; and while courts of equity are not prone to get entirely away from the common-law rule that oral evidence will not be permitted to vary or

alter the terms of a written instrument, and the rule that a written contract is presumed to contain the whole contract entered into by the parties, they will reform an instrument where it is apparent (bearing in mind the solemnity of the written contract and the force that goes with it) that a mistake has been made in reducing the contract to writing that the parties intended to make; and in applying the equitable rule the courts have been inclined to use stronger expressions as to the theory upon which the cases should be decided than they have practiced in deciding the individual cases. Thus we see the expression that the chancellor must be convinced beyond a reasonable doubt, and that a mere preponderance of the evidence will not suffice, and the like. As we view the rule in equity, after taking into consideration the force of the written instrument and the solemn facts which it evidences, if the plaintiff has evidence which convinces the chancellor that notwithstanding these a mistake has been made, a reformation may be granted In the case of Williamson v. Brown, 195 Mo. 313, 93 S. W. 791, where there was a conflict in the evidence, our Supreme Court granted reformation; and other Missouri cases may be found where the relief has been granted though there was conflicting evidence and though it could not be said that the mistake was proven beyond a reasonable doubt as we understand that expression in criminal law.''

The case at bar is stronger on the facts than the Horine Case. In that case there was sharp conflict in the evidence on the part of plaintiff and defendant. In the case now before us the evidence is practically all one way as to what plaintiff understood he was getting. Defendant says, however, that the agent had no authority to *promise* the kind of policy plaintiff claimed he purchased. It was shown that Shoemaker was a licensed agent with no specified territory, and that plaintiff paid $21 for a certain kind of policy. There is no showing that the agent's authority was limited, nor is there any showing that the defendant did or did not *write* the kind

of policy plaintiff says he purchased. No attempt was made to explain why plaintiff should have paid $21, and receive a policy the premium for which was $16. If defendant did not *issue* such a policy as plaintiff says he purchased, or if it issued such a policy and the premium for one year was more than $21, then it should have made some showing in those respects. The policy delivered contained this clause: "No agent has authority to change this policy or to waive any of its provisions." But what authority the agent had respecting the policy delivered is not the question. The question is: Did the agent have authority to see the kind of policy plaintiff says he bought? We are of the opinion that the evidence of authority on the part of the agent to sell the kind of policy plaintiff claims to have bought was sufficient to justify the finding that the agent had such authority. Especially should this be true in the absence of any evidence that his authority was limited as to the kind of policy he could sell. 14 R. C. L., page 902, sec. 80, lays down the general rule that most courts hold that a policy may be reformed where it does not conform to the agreement of the parties, though the mistake, so far as the company is concerned, was that of a mere soliciting agent with no power to issue a policy. That rule is applicable to the facts here. The soliciting agent, Shoemaker, had no authority to issue policies. He took applications and sent them in and the policy was issued at the home office of defendant. A note citing many cases will be found in 11 L. R. A. (N. S.) 357, in support of the general rule laid down in Rul. Cas. Law. This text says that the application is usually given great weight in determining the intention of the parties in a suit for reformation. Such is reasonable and just and we approve. But there is nothing in the application which plaintiff signed that makes it conclusive against his recovery for reformation. The application, it is true, was for "limited accident and sickness insurance." These quoted words appear in the first part of the application, but that is all. There is no explanation. The

record seems to indicate that the agent, Shoemaker, had with him when he took plaintiff's application a sample policy, but he says he did not read to plaintiff that part limiting recovery for the loss of an eye to losses occurring while a passenger on a railroad train, etc.

It is further contended by defendant that plaintiff cannot recover because he received the policy issued in pursuance to the application, and in accord therewith, and after receiving said policy, he read it over or had it read to him, and then laid it by and made no complaint as to the character of policy he had received prior to his injury. The application was taken October 12th. The policy is dated October 19th. Plaintiff lost his eye October 28th, or about that date. The policy was dated at Philadelphia, Pa. or in Jersey City, N. J., and mailed to plaintiff, as we understand. The record does not show just the date on which plaintiff received the policy. It is not unreasonable, however, to assume that the policy was not received prior to October 24th. Plaintiff says that he had had the policy only a "few days" before his injury. He read it or had it read, and so far as shown here he made no complaint prior to his injury. He lived, however, fifteen miles in the country from Lebanon, where the agent resided. He was a farmer, and perhaps busy about his farm. Not over three or four days elapsed from the time he received the policy until he received the injury. It is also apparent from this record that although plaintiff read the policy, or had it read by "the girl," that he did not understand it. Shoemaker testified that he did not understand it, and that several "good attorneys" did not. It was the duty of plaintiff to examine the policy he received, and if it did not contain the contract agreed upon to take steps to correct it. [Insurance Co. v. Lead Co., 169 Mo. App. 550, 154 S. W. 827.] But he had a reasonable time to take such steps after he received the policy. [Faith v. Home Life Ins. Co., 203 Mo. App. 196, 208 S. W. 124.] We do not believe, however, that plaintiff so neglected to make complaint that the policy

he received did not contain the contract agreed upon as to bar recovery. He was required to act with reasonable promptness, but his injury occurred before it should be said as a matter of law that he failed to act within a reasonable time. Hence we rule this contention against defendant.

Declaration number 1, of the refusal of which defendant complains, relates to the authority of the agent Shoemaker. It is to the effect that Shoemaker had no authority to make or sell the character of contract which plaintiff claims. What we have said, supra, as to the authority of this agent disposes of this question. There is no substantial merit to the assignment based on the admission of evidence.

The judgment should be affirmed and it is so ordered. *Cox, P. J.,* and *Farrington, J.,* concur.