ST. LOUIS COUNTY NATIONAL BANK, Plaintiff-Respondent,

v.

MARYLAND CASUALTY COMPANY, Defendant-Appellant.

No. 59625.

Supreme Court of Missouri, En Banc.

Sept. 12, 1977.

Robert E. Keaney, St. Louis, for defendant-appellant.

Edward L. Filippine, Clayton, for plaintiff-respondent.

HENLEY, Judge.

This is a suit in equity in which St. Louis County National Bank (County National) seeks (1) reformation of a fire insurance policy issued by Maryland Casualty Company (Maryland Casualty) to Hazel Novelty and Cabinet Company (Hazel Company), as insured, covering the contents of the Hazel Company's business premises located in St. Louis; and (2) a money judgment for the amount of a fire loss of the insured property, with interest. Trial before the court resulted in (1) a decree reforming the policy by naming County National as loss payee as of the beginning date of the policy; and (2) a judgment awarding it $13,626.58: $9,322.88, amount of the loss, and $4,303.70 interest. Maryland Casualty appealed, invoking the jurisdiction of this court on the ground the case involves "the validity of * * * authority exercised under the laws of the United States." Article V, § 3, Constitution of Missouri (as amended in 1970).

County National insists that this court does not have appellate jurisdiction of the case; that jurisdiction is in the court of appeals. The jurisdiction question has been briefed extensively by both parties. The facts relative to a determination of this question are as follows.

On or about August 31, 1965, Hazel Company borrowed money from County National and executed and delivered to it a document bearing that date entitled "Security Agreement, Inventory and Accounts Receivable." The agreement provided, among other things, that Hazel Company would keep its inventory insured against loss by fire and other hazards and that the policy would contain a loss payable clause to County National as its interest may appear. In due time a "financing statement," evidence of its security interest, was filed by County National as required by law.

Subsequent to August, 1965, Hazel Company borrowed additional money from County National pursuant to the security agreement, and, at the time of the fire, the amount due thereon exceeded substantially the amount of the fire loss.

A policy providing fire and extended coverage insurance in the amount of $10,000 on the contents of Hazel Company's business for a term beginning March 18, 1968, and ending March 18, 1969, was issued by Maryland Casualty and delivered to the insured. However, for some reason the policy failed to contain a clause making County National a loss payee of the proceeds.

On June 12 and August 2, 1968, the Internal Revenue Service (IRS) filed in the office of Recorder of Deeds of the City of St. Louis notices of liens for delinquent taxes owed by Hazel Company to the United States in the total amount of $12,159.01.

On August 24, 1968, the contents of Hazel Company's building were destroyed by fire. The loss resulting from the fire was $9,322.88.

On November 26, 1968, the IRS for the United States served on Maryland Casualty a notice of levy in the sum of $9,325.35 upon all property and rights to property of Hazel Company.

On February 25, 1969, Maryland Casualty received from Hazel Company proof of loss arising out of destruction of its property by the fire.

On March 12, 1969, Maryland Casualty issued its draft for $9,322.88 payable to "Hazel Novelty Company; U. S. Treasury, Department of Internal Revenue; St. Louis County National Bank," and others, as payees, and forwarded it to County National.

County National rejected the draft and returned it to Maryland Casualty. It bore no endorsements at that time.

Maryland Casualty then delivered the draft to the Director of Internal Revenue. The draft was endorsed by the Director and deposited by him in the Federal Reserve Bank to the credit of the Treasurer of the United States. It did not bear the endorsement of County National or Hazel Company. Upon presentation to Maryland Casualty the draft was paid.

There are no allegations in County National's petition claiming either (1) that the Hazel Company did not owe the United States the taxes described in the notice of liens; or (2) that the authority exercised under the laws of the United States by the Director of Internal Revenue filing the notices of liens against and levying upon the property and property rights of Hazel Company was invalid.

Maryland Casualty, in its answer, asserted that it was on notice of the recorded tax liens and the levy, "and by reason thereof the liens and levy of the U. S. Treasury, Department of Internal Revenue, take priority over any rights * * * claimed by * * * [County National]."

Conclusions of law made and filed by the trial court express clearly the theory upon which it decided this lawsuit. Of those conclusions the following are pertinent to the jurisdictional question presented:

"The policy of insurance should be reformed retroactive to March 18, 1968, the beginning of the term of said policy, to provide that County National is the loss payee of the proceeds of said policy, as its interest may appear.

"Upon the fire which occurred on August 24, 1968, the Hazel Company's compliance with the provisions of said policy, County National right to the proceeds of said policy of insurance vested.

"The right of County National to the proceeds of said insurance was superior to Hazel Company's rights in said proceeds and therefore Hazel Company could make no claim to said proceeds.

"Since Hazel Company had no right to the proceeds of said policy of insurance the various tax liens and levies which were filed by the Internal Revenue Service in no way affected County National's right to said proceeds.

"Maryland Casualty's payment of the proceeds of said insurance to the Internal

Revenue Service in no way affected its obligation to pay said proceeds to County National."

County National contends that the question presented involves not the *validity* of the act of the Director of Internal Revenue but the *effect* thereof.

That part of the "validity" clause of Mo. Const. Art. V, § 3, to which Maryland Casualty refers as authority for its appeal direct to this court appears for the first time in the 1875 constitution (Art. VI, § 12). The court, referring to that clause, said in *Kettelhake v. American Car & Foundry Co.*, 243 Mo. 412, 147 S.W. 479 (1912) that it "evidently contemplates that the jurisdiction of this court ought to be exercised for the protection of officers and other agents of the United States when questioned on account of their lawful acts done by virtue of authority having its foundation in the federal laws." 147 S.W. at 480.

■ For this court to have appellate jurisdiction under the clause "validity of any authority exercised under the laws of the United States" three requirements must be met.[1] First, the authority must have been exercised. *Salzwedel v. Vassil*, 347 S.W.2d 218, 219[3] (Mo.1961). Second, the act drawn in question must have been performed "by an officer or other agent of the United States" under authority of federal law. *Sound Investment & Realty Co. v. Griffin*, 205 S.W.2d 257, 260[2] (Mo.App. 1947); *Kettelhake v. American Car & Foundry Co.*, supra. Third, the *validity* of the exercised authority and not merely its *effect* must have been questioned. *Bostian v. Milens*, 354 Mo. 153, 188 S.W.2d 945, 947[2] (1945). See also *Adams Dairy Co. v. Dairy Employees Union*, 339 S.W.2d 811, 814[1] (Mo.1960). Cf. *Beekman Lumber Co. v. Acme Harvester Co.*, 215 Mo. 221, 114 S.W. 1087, 1089–90[1] (1908).

■ The first two requirements obviously have been met: authority has been exercised by an agent of the United States under command of federal law. Has the third requirement been met? We conclude that it has not. County National does not attack or question the validity of the federal statutes under which the Director of Internal Revenue has acted or the validity of the authority he has exercised under the requirements of those statutes. Maryland Casualty, of course, does not attack the validity of the exercised authority; it relies upon it. Its position is that the authority exercised by the Director established the priority of rights claimed by the federal government over rights claimed by County National. Its position in fact addresses the "effect" of exercised authority.

We conclude that the question presented does not involve the "validity" of authority exercised under the laws of the United States, but rather its "effect." For the reasons stated this court does not have appellate jurisdiction.

The case is transferred to the court of appeals, St. Louis district.

All concur.

---

1. See Washington University Law Quarterly, December, 1964: "Missouri Appellate Jurisdiction," § 2.043, pp. 506–510.