**ST. LOUIS COUNTY NATIONAL BANK, Plaintiff-Respondent,**

v.

**MARYLAND CASUALTY COMPANY, Defendant-Appellant.**

No. 39716.

Missouri Court of Appeals, St. Louis District, Division 3.

Feb. 28, 1978.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 10, 1978.

**922**

R. E. Keaney, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, for defendant-appellant.

Lashly, Caruthers, Thies, Rava & Hamel, Edward L. Filippine, Thomas Cummings, Richard D. Watters, Clayton, for plaintiff-respondent.

GUNN, Presiding Judge.

Maryland Casualty Company (Maryland) appeals from a circuit court judgment reforming a contract of insurance to name St. Louis County National Bank (County National) loss payee under a policy issued to Hazel Novelty and Cabinet Company (Hazel). Maryland was ordered to pay County National $9,322.88, the amount of loss resulting from a fire which destroyed Hazel's business premises in St. Louis, plus $4,303.70 interest accrued from the date of the fire to the date of the judgment. Maryland raises numerous points of error challenging the propriety of the reformation, the entitlement of County National to the proceeds in light of competing federal tax liens and the authority of the court to award interest. We affirm the judgment except as to the award of interest, which must be modified to comply with the terms of the policy.

Hazel is a Missouri corporation in the business of manufacturing wooden cabinets and other similar products. On August 31, 1965, Hazel, through its president, Frank O. Steiner, procured a loan from County National secured in part by its inventory. Financing statements were timely filed with the Secretary of State and with the St. Louis City Recorder of Deeds. Under the terms of the security agreement Hazel was to keep its inventory fully insured against fire and casualty loss. The policies were to contain a loss payable clause naming County National payee "as its interest may appear, the form of endorsements to such policies to that end to be otherwise in form and content satisfactory to Bank."

Steiner initially obtained the required insurance on Hazel's inventory from Independent Lumberman's Mutual Insurance Company. Under those policies, which were in effect until March of 1968, County National was named loss payee. Early in 1968, Steiner decided to change insurers. He contacted a personal friend, Frank Bittner, who was an officer of the Stuckenberg Insurance Agency Inc., (Stuckenberg) to secure the new coverage on Hazel's inventory. In the course of discussing the type of coverage sought, Steiner explained Hazel's relationship with County National to Bittner and instructed him to name the bank loss payee under a fire and extended loss policy. To ensure that the proper coverage was secured, Steiner gave Bittner a copy of the Lumberman's Mutual policy which contained a loss payable clause in favor of the bank. Bittner examined the old policy and then, according to Steiner, gave an oral assurance that insurance providing identical coverage was bound.[1] It was stipulated that Stuckenberg was the local agent for Maryland and that Bittner was an officer of Stuckenberg with the authority to bind Maryland to temporary contracts of insurance and to countersign policies issued by Maryland's St. Louis branch office.

---

1. For reasons unexplained Bittner did not appear at trial. All testimony as to statements allegedly made by him to third persons was admitted over Maryland's objection that it was hearsay. We shall examine the admissibility of these statements in our discussion relating to the propriety of the reformation of the insurance policy.

Neither Hazel nor County National received a written binder. It was stipulated that on March 18, 1968, Stuckenberg through Bittner obligated Maryland to a temporary binder of insurance providing fire and extended coverage in the amount of $10,000 on Hazel's inventory.

The policy itself was not countersigned by Bittner until August 5, 1968, and it was not delivered to Hazel until after August 24, 1968, the date of the fire. Because of this delay in issuance of the policy, Steiner became concerned. He telephoned Bittner on three occasions to inquire about the status of the policy. Each time Bittner assured him that the coverage was bound and that the policy would be forthcoming after necessary endorsements were obtained. Because of Bittner's assurances Steiner did not seek other insurance coverage.

Rodney Hill, a County National loan officer in charge of the Hazel account, testified that it was standard practice in the banking industry to require debtors to procure insurance on collateral naming the lender bank as loss payee. He stated that he and Steiner discussed Hazel's obligation under the security agreement to obtain insurance accomplishing this result. Hill also stated that he spoke with Bittner twice in the summer of 1968. During these conversations he informed Bittner that County National was to be named loss payee with a standard mortgage clause under the fire and extended loss policy. According to Hill, Bittner assured him that he had bound the requested coverage.

Merle Sanguinet, executive vice-president of County National, also testified to a conversation he had with Bittner concerning Hazel's insurance. In August of 1968, Bittner came to the bank seeking assistance from Sanguinet to persuade Steiner to pay the premiums for the fire insurance. Bittner told Sanguinet that he knew of the debtor-creditor relationship between Hazel and County National and that it was in the

bank's interest to ensure that the policy remained in force. Sanguinet told Bittner he would do what he could to assist in the collection of the premium.

On August 24, 1968, a fire destroyed Hazel's inventory.[2] Shortly thereafter, County National first learned that it had not been named loss payee under the policy. Although the policy issued contained a loss payable clause, the space reserved for the name of the payee was left blank. On September 6, 1968, Hazel assigned to County National its right to the proceeds of the Maryland policy. Having no written evidence of the insurance covering its interest, County National took the assignment "for whatever it might be worth." A proof of loss statement dated February 12, 1969, was filed with Maryland by Hazel claiming $9,322.88 in fire related losses.

The major complication in this case arises from the fact that on June 12, 1968 and on August 2, 1968, the Internal Revenue Service filed notices of liens, totaling $12,159.01, with the St. Louis City Recorder of Deeds against Hazel for unpaid taxes. On November 26, 1968, the Internal Revenue Service served a notice of levy on Maryland against Hazel in the amount of $9,325.35. Prior to that date Maryland had been served with a writ of garnishment arising from a prior judgment against Hazel in favor of Richard and Gladys Green.

On March 12, 1969, Maryland issued a draft for $9,322.88 naming Hazel, the Internal Revenue Service, County National and the Greens as payees. The draft was first forwarded to County National which returned it to Maryland without endorsement. Maryland then forwarded the draft to the Internal Revenue Service. The District Director and the Greens endorsed the draft, and it was deposited with the Federal Reserve Bank of St. Louis for credit to the Treasurer of the United States. The draft was subsequently presented to Maryland and was honored although it was endorsed by neither County National nor Hazel.

---

2. On the date of the fire Hazel's outstanding debt to County National exceeded $60,000. At no time since the fire has the balance due been less than the amount of loss claimed.

County National filed this suit in equity seeking reformation of the Maryland policy to name it as loss payee. The circuit court, sitting without a jury, granted the requested reformation and found that under the policy as reformed, County National's rights to the proceeds were superior to those of the Internal Revenue Service. Maryland was ordered to pay the proceeds of the policy to County National with interest ($13,626.58). Maryland appeals from this judgment.[3]

As this is an equitable proceeding tried without a jury, appellate review is governed by Rule 73.01 V.A.M.R. We review both the law and the evidence giving due regard to the superior opportunity of the trial court to judge the credibility of witnesses. The judgment of the trial court will be sustained unless there is no substantial evidence to support it; unless it is against the weight of the evidence; unless it erroneously declares the law; or unless it erroneously applies the law. *MFA Mutual Ins. Co. V. Thost*, 561 S.W.2d 431 (Mo.App. 1978); *Macalco, Inc. v. Gulf Ins. Co.*, 550 S.W.2d 883 (Mo.App.1977).

■ The first general issue raised is whether reformation of the insurance contract between Maryland and Hazel to name County National as loss payee was an appropriate remedy supported by the evidence. We believe it was. Reformation is an equitable remedy available to either party to a contract when the written instrument embodying their agreement does not express the true contract the parties agreed to and desired to put into writing. Equity will not impose a new contract upon the parties but will reform the instrument to accurately set forth the terms of the actual agreement. *King v. Riley*, 498 S.W.2d 564 (Mo.1973); *Walters v. Tucker*, 308 S.W.2d 673 (Mo.1957). It is not necessary to show that the parties to the contract agreed upon any particular language to be used; it is

sufficient to show that they agreed to accomplish a particular object by the instrument and that the instrument as executed is insufficient to effectuate their intention. *Bollinger v. Sigman*, 520 S.W.2d 710 (Mo. App.1975). Before an instrument will be reformed, the proponent of the reformation has the burden of proving by clear and convincing evidence that a mistake mutual and common to both parties has been made. It must be clear that the instrument has done what neither party intended. *J. E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261 (Mo.banc 1973); *Edwards v. Zahner*, 395 S.W.2d 185 (Mo.1965); *Walters v. Tucker, supra*. If such a mistake is shown it is irrelevant whether it is a mistake of law or fact or merely a scrivener's error; all may be rectified in equity. *Edwards v. Zahner, supra*; *Erickson Refrigerated Transp., Inc. v. Canal Ins. Co.*, 474 S.W.2d 337 (Mo.App.1971); Couch on Insurance 2d § 66:51.

■ The remedy of reformation is available to reform insurance contracts under the same principles as any other contract. *Peterson v. Commonwealth Casualty Co.*, 212 Mo.App. 434, 249 S.W. 148 (1923). In the insurance contract situation, whether the elements supporting reformation are present rests largely on questions of agency law. The corporate insurer's contact with the individual seeking insurance is usually through a third party at a local insurance agency. The third party may be an agent for the insured or the insurer depending on the circumstances surrounding the transaction. For whom he acts, as well as the extent of his powers, is determined by the general law of agency. Couch on Insurance 2d § 26:53.

In the absence of fraud or collusion between the agent and the insured, the insurer is bound by the acts or representations of its agent within the scope of his real or apparent authority, unless limitations on

---

**3.** The appeal was first filed with the Missouri Supreme Court but was transferred to this court for lack of jurisdiction. *St. Louis County*

*National Bank v. Maryland Casualty Company*, 555 S.W.2d 33 (Mo.banc 1977).

the agent's powers are known by the insured. *Boyle v. Colonial Life Ins. Co.,* 525 S.W.2d 811 (Mo.App.1975); *Galemore Motor Co., Inc. v. State Farm Mut. Automobile Ins. Co.,* 513 S.W.2d 161 (Mo.App.1974); *Voss v. American Mut. Liability Ins. Co.,* 341 S.W.2d 270 (Mo.App.1960). The relationship of agent and principal will not be presumed but must be proved by the party asserting the existence of the relationship. Neither the existence nor the scope of the agency may be established solely by the declarations of the alleged agent. *Morrow v. Loeffler,* 297 S.W.2d 549 (Mo.1956); *Dudley v. Dumont,* 526 S.W.2d 839 (Mo.App. 1975). Once agency is proved there is no legal restriction on the power of an agent acting within the scope of his authority, actual or apparent, to bind the insurer by an oral contract of insurance. *Morris v. Reed,* 510 S.W.2d 234 (Mo.App.1974); *Voss v. American Mut. Liability Ins. Co., supra.* The acts and knowledge of the agent are the acts and knowledge of the insured. *Edwards v. Zahner, supra.*

Maryland's initial contention is that the trial court erred in its conclusions of law that Bittner was Maryland's agent and that he, as its agent, agreed with Hazel that County National was to be named loss payee under the insurance contract. Maryland asserts that Bittner's agency relationship, as well as his agreement with Hazel concerning the loss payable clause, was supported only by Bittner's declarations to third parties which were inadmissible as hearsay.

■ Maryland's argument is without merit. County National proved by substantial and competent evidence not only that Bittner was Maryland's agent with the actual authority to bind it to the insurance coverage sought, but also that the true agreement between the parties was that County National be named loss payee. The parties entered into a stipulation of facts in which Maryland admitted that Stuckenberg was its local agent [4] and that Bittner was a duly authorized officer of Stuckenberg empowered to bind Maryland to temporary insurance binders and to countersign policies of insurance. It further admitted in its answer that Bittner issued a temporary binder to Hazel and that Maryland eventually issued a policy on Hazel's property. These admissions were sufficient to establish that Bittner was an agent for Maryland with the power to bind it to contracts of insurance. His knowledge of Hazel's insurance needs and his agreement to provide for those needs is binding on Maryland.

The fact that there was an agreement between Hazel and Bittner that County National was to be named loss payee under the fire and extended coverage policy is supported by ample evidence. Steiner testified that he specifically informed Bittner that County National was to be named loss payee. He gave Bittner a copy of a predecessor policy which properly named the bank payee in order to ensure that County National's interests under the security agreement would be equally protected under the new policy. Moreover, when Bittner encountered premium payment difficulties with Hazel, he contacted Mr. Sanguinet at County National for assistance in collection, confirming his awareness of County National's interest under the policy and its and Hazel's desires regarding the loss payable clause.

■ The fact that Bittner, acting as Maryland's agent, agreed to secure a policy of insurance to conform with those desires is established by his direct admissions to both Steiner and Hill that the coverage

---

4. See Couch on Insurance 2d § 26:191. "The local agent of an insurance company is the medium through which the business of procuring insurance contracts is customarily carried on and such agents frequently make parol contracts of present insurance which, if within the scope of the agent's authority are binding upon the insurer. A local agent is clothed with apparent authority to make an oral contract of insurance, unless the insured knows that the making of an oral contract would be to exceed his authority."

naming County National loss payee was bound. Maryland's contention that Bittner's out of court declarations were hearsay and inadmissible is not meritorious. Declarations of an agent in the course of, relating to, or connected with the ordinary business of the principal within the scope of his authority are excepted from the general prohibition against hearsay and are competent as admissions against the principal. *Shelton v. Wolf Cheese Co.,* 338 Mo. 1129, 93 S.W.2d 947 (1936); *State ex rel. State Highway Comm'n. v. Baker,* 505 S.W.2d 433 (Mo.App.1974). Such statements are admissible even though the declarant's unavailability is not shown. *Roush v. Alkire Truck Lines Inc.,* 299 S.W.2d 518 (Mo.1957).

■ The evidence was sufficient to prove that Bittner was an agent of Maryland with actual authority to bind policies of insurance and that he agreed with Hazel to name County National loss payee. No explanation appears in the record why this agreement was not set forth in the policy issued. In a suit for reformation, however, the source of the mistake is not relevant; it is the fact of the mistake which empowers the court of equity to act. The parties were in agreement as to the objectives of the insurance coverage. The form of policy to accomplish that design was left to Bittner's discretion. "[W]hen an applicant for insurance correctly states his interest in the property to be insured and distinctly asks for insurance thereon, and the agent of the insurer agrees to comply with his request and assumes to decide on the form of the policy to be written for that purpose, but by mistake of law adopts a form which does not cover such an interest, equity will reform the policy so as to make it cover that interest." *Erickson Refrigerated Transp.,*

*Inc. v. Canal Ins. Co., supra,* 474 S.W.2d at 340.

■ Maryland argues that even if Bittner had the actual authority to temporarily bind insurance he had no authority under the terms of the policy to waive or to change its provisions once the policy was issued. Maryland's argument misconstrues the remedy of reformation and implies that once a policy is issued it may not be reformed to embody the actual agreement between the local agent and the insured. A clause in an insurance policy purporting to limit the power of an agent to modify the policy does not bar reformation. Couch on Insurance 2d § 66:12. In *Peterson v. Commonwealth Casualty Co., supra,* the court answered a contention similar to that raised here by Maryland. It stated: "But what authority the agent had respecting the policy delivered is not the question. The question is: Did the agent have authority to sell the kind of policy the plaintiff bought." [5] *Id.* at 51. The court held that where agent had the authority to sell the type of policy agreed to between the insured and himself, a clause in the policy stating that the agent had no power to waive or change the provisions of the policy did not bar reformation of the contract to provide the insurance actually sought.

The policy issued by Maryland contained a blank loss payable clause of the type sought by Hazel. It is manifest, therefore, that Bittner had the authority to sell such a policy to Hazel. The court's judgment reforming the policy is sustained. See also, *Erickson Refrigerated Transp., Inc. v. Canal Ins. Co., supra.*

Maryland next argues[6] that the trial court erred in its conclusion of law that the proceeds of the policy vested in County

5. In *Peterson,* the court held that where the policy issued does not conform to the agreement of the parties it may be reformed even though the mistake was that of a soliciting agent who had no power to issue policies.

6. In the second point relied on Maryland asserts that "The court erred in its finding of fact

No. 10 and its conclusion of law No. 4 that the bank relied on the representations of Bittner that it had been named as a loss payee in the policy." This is nothing but an abstract allegation of error which fails to assert why and wherein the trial court erred. As such it violates Rule 84.04(d) V.A.M.R. If it were only

National, as loss payee, upon the occurrence of the fire August 24, 1968. It argues that the proceeds first vested in Hazel at which time the hovering federal tax liens attached, taking priority over the bank's rights under the policy. We reject Maryland's argument in this regard.

It must be remembered that because of the reformation of the insurance contract, the rights of the respective parties are determined under the policy issued as if it had named County National loss payee in the manner the parties had agreed. Under the terms of the 1965 security agreement between County National and Hazel, the bank was to be named loss payee under the fire and extended coverage policy "as its interest may appear, the form of the endorsements to such policies to that end to be otherwise in form and content satisfactory to Bank." The issue to be decided under a policy containing the specified loss payable clause is whether County National has priority to the proceeds over the federal government's tax liens. Notwithstanding Maryland's assertions to the contrary, County National does not base its claim to priority on the security agreement which was perfected prior to the federal tax liens. Rather, it asserts that its right to the proceeds was an independent contract right under the loss payable clause of the insurance policy. County National argues that prior to the loss caused by the fire the right to the proceeds was contingent and not subject to any lien. Upon the occurrence of the loss, the right to the proceeds vested in it pro tanto, before Hazel acquired any interest or right to which the federal tax liens could attach.

There is no challenge as to the propriety of the government's liens against Hazel under 26 U.S.C. §§ 6321 and 6331. Under those sections the government has a lien against all "property and rights to property" belonging to a delinquent taxpayer which may be levied upon after a notice of lien is filed. Moreover, both parties concede that under the "Choateness Doctrine" no lien could attach to the insurance proceeds so long as there was but a contingent right to their receipt, because rights not in existence at the time of the demand upon a taxpayer are not subject to any lien.[7] *United States v. Long Island Drug Co., Inc.,* 115 F.2d 983 (2d Cir. 1940).

A fire insurance contract such as that involved in this case is but a conditional contract to indemnify upon the happening of a future event—a loss of the insured property due to fire. *Home Ins. Co. v. B. B. Rider Corp.,* 212 F.Supp. 457 (D.N.J.1963). Until the loss occurs neither the insured nor the loss payee has a vested right to receive the proceeds, and there is no existing property or property right to which a lien may attach. *Chrysler Credit Corp. v. Empire Mutual Ins. Co.,* 31 AFTR2d 73–713 (S.D.N.Y.1972). While the taxpayer's rights remain contingent he may prevent the attachment of a tax lien by divesting himself of those rights at any time before they vest. *Home Ins. Co. v. B. B. Rider Corp., supra.* Whether one has successfully divested himself of contingent rights to property is a question of state law. *United States v. Sterling Nat'l Bank and Trust Co. of N. Y.,* 494 F.2d 919 (2d Cir. 1974). The federal tax lien statute does not enter into the determination; it does not create property rights in the government but merely provides for the attachment of a lien to property rights created under state law. *Home Ins. Co. v. B.*

the form of the point which was defective we would be constrained in the interests of justice to consider the point. In this instance, however, Maryland has not cited any case establishing that the bank's reliance on Bittner's representations was a necessary element for reformation. We decline to review this point further.

7. A lien is perfected in the sense that there is nothing left to be done to have a choate lien when the identity of the lienor, the property subject to the lien and the amount of the lien are established. *United States v. Equitable Life Assurance Society,* 384 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966); *United States v. Pioneer American Ins. Co.,* 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963).

*B. Rider Corp., supra.* Thus, we look to state law to determine when and in whom the right to receive the proceeds of the fire insurance vested.

Maryland, in arguing that Hazel acquired a vested right in the insurance proceeds to which the tax lien attached, relies principally on the fact that the loss payable clause specified in the security agreement was an open or simple mortgage clause as distinguished from a union or standard clause. A loss payable clause is construed as open where it directs the insurer to pay the proceeds of the policy to the named payee "as his interest may appear" and contains no other provision protecting the payee's rights against breach of the insurance contract by the insured. *Ramsey v. Farmer's Mut. Ins. Co., supra; Prudential Ins. Co. v. German Mutual Fire Ins. Ass'n,* 228 Mo. App. 139, 60 S.W.2d 1008 (1933). Under an open clause, the payee or mortgagee's rights, as against the insurer, are dependent upon acts of omission and commission by the insured. *Ramsey v. Farmer's Mutual Ins. Co. of Macon,* 234 Mo.App. 1102, 139 S.W.2d 1027 (1940). The mortgagee is named payee of the proceeds (or a portion thereof), but there are no other provisions in his favor. Couch on Insurance 2d § 42:649. Breach of the terms of the policy by the insured, by act or neglect, prior to the loss so as to render the policy void as to him will render the policy void as to the mortgagee as well. *Prudential Ins. Co. v. German Mut. Fire Ins. Ass'n, supra.* There is no privity of contract created between the insurer and the mortgagee; the mortgagee is not a party to the contract but is an appointee to receive the proceeds to the extent of his interest in case of loss. *Prudential Ins. Co. v. German Mut. Fire Ins. Co.,* 231 Mo.App. 699, 105 S.W.2d 1001 (1937); *Prudential Ins. Co. v. German Mut. Fire Ins. Ass'n, supra,* Couch on Insurance 2d § 42:660. Prior to the loss the mortgagee's rights are generally no greater than those of the insured's; if the insured has no right to recover, neither does the mortgagee. *Brown v. State Auto. Ins. Ass'n, Auto.*

*Underwrit. Corp.,* 265 S.W.2d 741 (Mo.App. 1954); Couch on Insurance 2d § 42:663. As against the insurer the mortgagee stands in the insured's shoes and is generally subject to the same defenses. *Semo Motor Co. v. National Mut. Ins. Co.,* 383 S.W.2d 158 (Mo. App.1964).

Under a standard or union mortgage clause the mortgagee's rights under the policy are protected against the insured's breach of the insurance contract by an additional provision stating that the mortgagee is not bound by the default or breach of the insured. *Semo Motor Co. v. National Mut. Ins. Co., supra;* Couch on Insurance 2d § 42:649; § 42:685. It functions as an independent contract of insurance between the insurer and the mortgagee. *Ramsey v. Farmer's Nat. Ins. Co., supra; Prudential Ins. Co. v. German Mut. Fire Ins. Ass'n, supra.* The independent contract is not void for lack of consideration, because the consideration for the standard mortgage clause is that paid by the insured for the original policy. *Prudential Ins. Co. v. German Mut. Fire Ins. Ass'n, supra.* Thus, under a standard clause the rights of the mortgagee under the policy are determined immediately upon the creation of the contract though liability of the insurer and the amount remain contingent until the occurrence of the loss. Maryland concedes that under a standard clause no lien could attach to the mortgagee's interest in the proceeds, because his interest vested prior to the time it became choate without ever having vested in the insured.

Under an open clause, the respective rights of the insured and the mortgagee to the proceeds are not determined and fixed until the happening of the event insured against, because the insured by his breach prior to the loss may completely defeat the mortgagee's rights under the policy. *Hahn v. National American Fire Ins. Co.,* 233 Mo.App. 756, 127 S.W.2d 94 (1939). The amount due the mortgagee is fixed at the amount of the mortgage debt outstanding at the time of the loss. *Hartford Fire Ins.*

*Co. v. Bleedorn,* 235 Mo.App. 286, 132 S.W.2d 1066 (1939). The right to the excess of the proceeds over the amount of the debt is vested at the same moment in the insured. Id. Once vested, the mortgagee's right to the proceeds may not be divested by any act or omission of the insured without the mortgagee's knowledge and consent. *Semo Motor Co. v. National Mut. Ins. Co.,* supra; *Hahn v. National American Fire Ins. Co., supra;* Couch on Insurance 2d § 42:678; § 642:679. Thus, even under an open clause on the occurrence of the loss, the mortgagee's right to the proceeds to the extent of his interest is, as against the insurer, superior to that of the insured. "[T]he right to sue is in the mortgagee alone upon the theory that the clause in the insurance policy gives him the same rights as if the policy had been absolutely assigned to him." *Hartford Fire Ins. Co. v. Bleedorn, supra* at 1070–1071. See also *Ridge v. Home Ins. Co.,* 64 Mo.App. 108 (1895).

In light of the previous discussion relating to the rights of mortgagees under open and standard clauses, we cannot discern how the distinctions between the two types of clauses can affect the outcome of this case. Under both, upon the occurrence of the loss, the right of the mortgagee to the proceeds is identical, i. e., superior to that of the insured to the extent of the outstanding debt.

In *Chrysler Credit Corp. v. Empire Mut. Ins. Co., supra,* the court was faced with a question almost identical to that presented here. The insured had purchased a car under a retail installment contract which was later purchased by Chrysler. Under the contract, the debtor was required to insure the car against loss naming Chrysler loss payee "as its interest may appear." At the time the insured purchased the car, notices of federal tax liens had been filed against him. Shortly after the policy took effect the car was destroyed and the Internal Revenue Service served the insurer with a notice of levy to satisfy its tax liens. The insurer then issued a draft made payable to

the insured, Chrysler and the Internal Revenue Service. The draft was honored though the Internal Revenue Service was the only endorser. Chrysler sued the insurer for its proportionate share of the proceeds under the loss payable clause of the policy. The insurer defended by arguing that upon the loss the proceeds became property or a right in property of the insured to which the tax liens attached. The court, however, rejected the insurer's argument holding that under the open loss payable clause the insured had assigned away his right to the proceeds while it was still contingent and inchoate to the extent of Chrysler's interest. Upon the occurrence of the loss, Chrysler was vested, pro tanto, with an interest independent of the taxpayer's and not subject to liens outstanding against him.

Maryland has cited no case in which a contrary result has been reached. It argues that the court in *Home Ins. Co. v. B. B. Rider Corp., supra,* reached a contrary result. It is true that the court found for the government based on its tax lien and against the payee under a loss payable clause. The court, however, stated that it held as it did because the insurance policies were not before the court and there was no secondary evidence requiring a finding to the contrary. The entire proceeds of the policy were considered to have vested, at least momentarily, in the insured at the time of the loss, and the tax liens took priority over the unproved loss payable clause. Here, we have the loss payable clause before us, and under its terms hold that the proceeds of the policy on the occurrence of the loss vested pro tanto in the loss payee and not the insured.

We believe that in the wake of our conclusions regarding the respective rights of the parties under an open loss payable clause, the *Chrysler* decision is well reasoned and should be followed.

Maryland next argues that because it procured Hazel's assignment of the rights under the insurance policy, County National is estopped from asserting any rights under

the loss payable clause. The existence of the purported assignment is stipulated. There is no evidence to show that Maryland in any way relied on the assignment or was misled to its detriment. Estoppel, to arise as a defense, requires a showing of an act or statement inconsistent with a later asserted claim, action or forbearance by the other party in reliance on such act or statement and prejudice resulting therefrom. *Bresnahan v. Bass,* 562 S.W.2d 385 (1978); *Lucas v. Beco Homes, Inc.,* 494 S.W.2d 417 (Mo.App.1973). There was absolutely no showing, aside from Maryland's unsubstantiated statement in its brief, that it relied on the fact of the assignment to its prejudice. Moreover, one may not set up another's act or conduct as a ground for estoppel unless he was misled or deceived thereby. Nor may a party who knew or had the means to know the true basis of the recovery rely on the defense of estoppel. *Land Clearance for Redevelopment Authority v. Dunn,* 416 S.W.2d 948 (Mo.1967); *Hall v. Charlton,* 447 S.W.2d 5 (Mo.App.1969). In this case Maryland is imputed with the knowledge of its agent, Bittner, that County National was entitled to payment of the proceeds under the loss payable clause of the policy. The assignment granted is not inconsistent with County National's rights under the mortgage clause. Any additional protection County National may have sought to achieve by means of the assignment does not relieve Maryland of its knowledge of the bank's rights under the policy. County National was not estopped to assert its rights under the policy.

■ Finally, Maryland argues that the trial court erred in awarding County National interest on the principal of the judgment from the date of the fire, August 24, 1968, to the date of the judgment, May 6, 1976.[8] Maryland's argument is correct in part. Under the terms of the policy the

insurer was not required to pay out the proceeds until 60 days after the proof of loss statement was filed. The court, therefore, erred in awarding interest from the date of the loss. *Spink v. Mercury Ins. Co.,* 260 S.W.2d 757 (Mo.App.1953). Under § 408.020 R.S.Mo 1969, however, interest from the date that the proceeds became due and payable was proper. *Shultz v. Queen Ins. Co.,* 399 S.W.2d 230 (Mo.App.1965).

The judgment of the trial court is affirmed, except for its order compelling Maryland to pay accrued interest on the principal of the judgment from the date of the loss. The cause is remanded to the trial court with directions to amend its judgment to award interest from the date the proceeds became due and payable to the date of judgment.

SIMEONE, C. J., and KELLY, J., concur.

---

**8.** Maryland argues that because Hazel had repaid all of the outstanding principal on its loan from County National and its remaining debt consisted only of interest payments that to be required to pay interest on this judgment would be an agreement to pay interest on interest not sanctioned by the policy. It argues that under § 408.080 R.S.Mo 1969 such an agreement must be in writing to be enforceable. Its

conclusion is in error. Maryland is not being required to pay interest on Hazel's debt to County National, however it is categorized, but on the judgment against it in County National's favor. Interest on the amount of the judgment from the day the proceeds became due and payable is permitted under § 408.020 R.S.Mo 1969.