**Earl WILLIAMS,**
**Plaintiff-Respondent-Appellant,**

v.

**UNITED INSURANCE COMPANY OF**
**AMERICA,**
**Defendant-Appellant-Respondent.**

**No. WD 31626.**

Missouri Court of Appeals,
Western District.

June 2, 1981.

James W. Benjamin, John R. Loss, Field, Gentry, Benjamin & Robertson, Kansas City, for plaintiff-respondent-appellant.

Paul G. Lane, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, for defendant-appellant-respondent.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

DIXON, Judge.

These are cross appeals arising from court-tried litigation involving a disability policy. Plaintiff received a verdict on his petition for benefits under the policy but was denied relief on claims for vexatious refusal to pay and attorney fees.

Defendant, United Insurance Company of America, appeals the judgment in favor of plaintiff, asserting the defense of reformation of the policy should have been sustained.

Plaintiff cross appeals, contending the trial court should have allowed damages for vexatious refusal to pay and attorney fees.

The case was submitted to the trial court on a stipulation of facts and exhibits. The legal file also contains interrogatories and answers by both parties.

The plaintiff applied through an agent of the defendant company for a disability policy. There is nothing in the record as to whether the agent solicited the plaintiff. All that appears is the application. It was the plaintiff's understanding that he was applying for a disability policy paying a $400 monthly benefit with no restriction as to strains or sprains. The stipulation recites that the defendant made no representations, express or implied, that sprains and strains were covered for a one-year period. The application makes no reference one way or the other to sprains or strains. The application was titled "Application to United Insurance Company of America for Monthly Disability Insurance" and indicates on its face that a premium of Twenty-Two and 56/100 Dollars ($22.56) is to be charged and that the policy provides for a monthly benefit of Four Hundred Dollars ($400.00). The plan of insurance indicated on the face of the application is "MDH."

The defendant, as a result of clerical error, issued a "GD" policy, which was a policy intended for use in the State of Florida and which had never been submitted for approval to the Missouri Division of Insurance. The stipulation says that the policy which should have been issued was an "MD" policy. As an exhibit to the stipulation are two policies identified as the "MD" policy and the "GD." Under the "GD" policy, the plaintiff's disability would have been compensable for one year; under the "MD" policy, his disability was compensable for only one month. There is no issue as to plaintiff's disability.

An examination of the two policies reveals that the designation of the policy appears on the lower left hand corner of each page of the policy in ordinary typescript. The "GD" policy bears the legend "GD32" and the "MD" policy bears the legend "MD32MO" in the described location. No explanation is made in the stipulation as to the significance, if any, of the variances between the stipulated fact of the proper policy being an "MD" policy and the legend on the exhibit offered, which was "MD32MO." There is nothing to indicate that there are or are not other policies issued by the defendant bearing the designation "MD." Nor is there any information available as to the meaning of the notations on the application of "MDH" on the face and "MD" on the back. It has been tacitly conceded by the stipulation that these variances are not material and the case will be considered under the stipulation posed.

Also removed from consideration by the stipulation is any implication of a representation by the defendant arising from the failure of the application to have included any statement of the limitation of the coverage. There is no evidence of any kind that the plaintiff was informed in any way of any such limitation such as the one the company now claims and the stipulation in fact negatives any such knowledge by stating the plaintiff's understanding to be he was purchasing a policy with no restriction

as to strains or sprains. There is no dispute the amount due on the policy issued is $4,400 if plaintiff prevails. The clerical error in the issuance of the policy was not discovered until after the plaintiff had sustained the loss. The date of the discovery was stipulated to be October, 1977, almost two years after the policy was applied for by plaintiff. Plaintiff paid the $22.56 per month for the premium along with other premiums for other policies he held with the defendant insurance company. This payment began in November, 1975, and continued at least until August of 1976 when the disabling accident occurred and perhaps as late as March of 1978 when the defendant's agents visited plaintiff and gave him a copy of the "MD" policy and explained the differences in coverage. Payments of $200 and $400 were made before suit was filed. Plaintiff was disabled in an auto accident in August, 1976, and has been terminated as an employee of the Post Office on medical disability.

The defendant insurance company attacks the judgment contending that the trial court erred as a matter of law in refusing to sustain its tendered defense of reformation.

■ The argument of the defendant insurance company is formulated as follows. The defendant company asserts certain basic principles of the law concerning reformation which are not disputed and may be simply stated. Reformation is applicable to insurance contracts. *Peterson v. Commonwealth Casualty Company*, 212 Mo.App. 434, 249 S.W. 148, 150 (1923). A written instrument which does not conform to the contract agreed to by the parties will be reformed in equity to reflect the contract agreed to. *St. Louis County National Bank vs. Maryland Casualty Company*, 564 S.W.2d 920, 924 (Mo.App.1978). The party seeking reformation or asserting it as a defense has the burden to establish by clear and convincing evidence that *a mutual mistake common to both parties* has been made. It must be clear that the instrument has done what neither party intended. *St. Louis County National Bank, supra.* The

nature of the mistake as one of fact, law, or scrivener's error is irrelevant. Equity will remedy the mutual mistake and grant reformation. *St. Louis County National Bank, supra.* The precise words of agreement between the parties are not required but the evidence must disclose the particular object which the parties sought to agree upon by the written instrument, coupled with a showing that the instrument is insufficient to satisfy this objective. *Bollinger v. Sigman*, 520 S.W.2d 710 (Mo.App.1975).

■ Upon these settled principles, the defendant seeks to convict the trial court of error in refusing its proffered defense of reformation. The defendant asserts that it was its intention to issue, and plaintiff to receive, a contract of insurance denominated an "MD" policy, and they point to the application containing the designation "MDH" as the plan of insurance designated on the application and the "MD" designation on the reverse of the application, fortuitously ignoring the contradiction in those terms. Also ignored is the language of the title to the application, "Application for monthly disability insurance" and the indication of Monthly benefit $400." They then argue that there is no evidence that the plaintiff intended to receive a policy of insurance other than that for which he applied and for which he paid premiums.

First of all, the argument is factually flawed for it ignores the stipulated fact that the plaintiff understood he was to receive a policy of insurance which paid $400 a month without limitation as to strain and sprain. Defendant attempts to read into the stipulation an understanding by the plaintiff that the designation "MD" or "MDH" represented an agreement by the plaintiff to a limitation upon the coverage he understood he was getting. There is not a shred of evidence that the agent or anyone else ever told the plaintiff what those designations meant. Nor is there any evidence that the plaintiff received a copy of the application which, if available to him, would have permitted him, by a careful scrutiny of the policy and some understanding of the insurance business, to dis-

cover that the policy as issued was not the policy applied for. There is simply no evidence in the stipulation which demonstrates any *mutuality of mistake* as to a factual matter. The critical fact is the basic agreement of the parties. Contrary to defendant's assertion, the stipulation leaves this in doubt.[1] The plaintiff believed no limitation existed. The "MD" policy, if properly issued, would have apprised him of the limitation and permitted him the option of continuing or cancelling long before his loss occurred.

Recognizing the inherent difficulty in the factual argument, the defendant shifts ground slightly and, relying upon *Cameron State Bank v. Sloan*, 559 S.W.2d 564 (Mo. App.1977), and *Berry v. Continental Life Insurance Company of America*, 224 Mo. App. 1207, 33 S.W.2d 1016 (1931), attempts to evolve a theory of imputation to the plaintiff of the conceded mistake by the defendant. The authority cited by the defendant is distinguishable from the instant case upon at least two grounds. The *Cameron State Bank* case reviewed at length the authorities concerning mutual mistake and held that the mistaken release of the deed of trust and recordation of payment of a note, which was in fact not paid, was subject to reformation despite the negligence of the holder of the note cancelling the deed of trust and note. Heavily emphasized in that case was the fact that the maker of the note had suffered no damage and to hold otherwise would result in an unconscionable advantage without any change of position in reliance upon the bank's act.

The instant case, however, is upon an entirely different factual basis. The plaintiff in this case received a policy, paid premiums upon it for an extended period of time, suffered a loss, and upon making claim for the loss, the mistake was discovered. If the mistake had been discovered by the defendant insurance company prior to

any loss accruing to the plaintiff, a different fact situation more analogous to the *Cameron State Bank* case would be presented, for then plaintiff here would have suffered no detriment by the reformation of the policy. Under the facts of the instant case, the plaintiff could have done nothing to prevent the detriment he will suffer if reformation is granted. The most careful examination of the policy by the plaintiff would not have disclosed to him that the policy represented anything other than what his understanding of his coverage was. Thereafter, he paid the premiums for many months. Absent the rather fanciful notion that the plaintiff would know that the legend, "GD32" demonstrated that an error had been made in the issuance of the policy, nothing appears to show that plaintiff was aware of any mistake. It is simply not consistent with the equitable principles underlying reformation to permit reformation in this case. It is true as the court noted in *Cameron State Bank* that not all of the language of the cases can be reconciled, but the principle and rationale of the cases simply does not support defendant's position in this case.

As to the older case cited by the defendant, *Berry, supra,* it is sufficient to say that opinion specifically stated that the terms upon which the policy issued were consistent with the application made by the plaintiff and that the cash surrender value erroneously computed was apparent on the face of the policy. There is nothing in the *Berry* case contrary to what is here determined, for in the instant case, there is nothing on the face of the policy which would have alerted this plaintiff to the error of the insurance company. The *Berry* case is simply factually inapposite to the instant case.

The plaintiff's claim for attorney fees and damages for vexatious refusal to pay is subject to such fundamental procedural defects that it may not be considered on the merits.

---

1. The parties have not raised the question of the reasonable expectations of the parties in a situation where the written contract is entirely based upon forms. See *Estrin Construction Co., Inc. v. Aetna Casualty and Surety Co.*, 612 S.W.2d 413 (Mo.App.1981). This case does not turn, as did *Estrin*, on a question of the interpretation of the contract but turns upon the defendant's failure, as the party having the burden of proof, to show mutuality of mistake.

The case originated in the magistrate court where plaintiff took a default judgment. The present appeal is from a trial de novo in the circuit court on the stipulation of facts. There is no stipulation as to the value of the attorney fees and no evidence of any kind concerning the issue. Although plaintiff asked for a hearing in the stipulation, the record reveals no effort to pursue the request. The trial court judgment must be assumed to comprehend a denial of the request and plaintiff failed to take any postjudgment action to preserve the issue by an offer of proof or motion to amend. Section 375.420 RSMo 1978, upon which plaintiff relies, permits the fact finder to determine damages (not to exceed 10% of the loss) and reasonable attorney fees. It has been held that attorney fees may be awarded without damages for vexatiousness if within the evidence. *Hayden v. American Cent. Insurance Co.*, 221 S.W. 437 (Mo.App.1920), cert. quashed, 289 Mo. 382, 232 S.W. 683 (1921). That holding might be questioned in view of the conjunctive in the statute joining damages and attorney fees, but it is of no moment here, for there was never any request for the trial court to take evidence or an offer of proof on either issue, and they must be considered as abandoned by plaintiff. At least it is clear the issue of attorney fees required evidence. *City of Aurora v. Fireman's Fund Insurance Company*, 180 Mo.App. 263, 275, 165 S.W. 357 (1914). Here, no evidence was presented, nor any attempt to do so. The issue was waived and abandoned by plaintiff.

The motion for frivolous appeal filed by plaintiff is overruled.

The trial court judgment for the plaintiff is without error of law and is affirmed.

All concur.